```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA              :
                                      :
         -v.-                         :
                                      :
DOUGLAS SHYNE,                        :   S4 05 Cr. 1067 (KMK)
NATASHA SINGH,                        :
   a/k/a "Beatris Rodrigues,"         :   AFFIRMATION
NATHANIEL SHYNE,                      :
TOYBE BENNETT,                        :
   a/k/a "Dmitriy Makarevich,"        :
   a/k/a "Dmitriy Makervish,"         :
   a/k/a "Eduardo Rodrigues,"         :
   a/k/a "Cecilio Pena,"              :
ROBERTO MONTGOMERY,                   :
EPHRAIM RICHARDSON,                   :
NARESH PITAMBAR,                      :
JASON WATLER,                         :
STEVEN RIDDICK,                       :
NATHANIEL ALEXANDER, and              :
TIMOTHY MONTGOMERY,                   :
                                      :
         Defendants.                  :
- - - - - - - - - - - - - - - - - - - -x
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

E. Danya Perry, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

1. I am an Assistant United States Attorney in the Office of Michael J. Garcia, United States Attorney for the Southern District of New York. I submit this affirmation in response to the motion filed by defendant Nathaniel Alexander and the affirmation filed by his attorney, Michael Fineman, Esq., both dated June 1, 2006, alleging, inter alia, "grave prosecutorial misconduct."

2.  Nathaniel Alexander was arrested at his home in Portsmouth, Virginia on February 9, 2006, based upon charges contained in the Second Superseding Indictment in this case, returned by a grand jury on February 8, 2006. I had no involvement in the determination of which agents were to travel to Virginia to arrest Alexander, nor did I give them any instructions with respect to taking Alexander's statements. Following Alexander's arrest, I was informed by agents with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") that, following the administration of both verbal and written Miranda warnings, Alexander had made a number of statements and had assisted agents in trying to locate one of his co-defendants, Steven Riddick. I did not at any time, and still do not, have any reason to mistrust the agents' representations.

3.  In gathering discovery materials following Alexander's arrest, I requested all of the documents relating to Alexander in the possession of ICE agents. Knowing that Alexander had made Mirandized post-arrest statements, I specifically requested records of those statements and the written Miranda waiver form. I was given a packet of materials relating to Alexander, including a typewritten memorandum containing Alexander's post-arrest statements and the waiver form. At that time, I was not

aware of any contemporaneously written notes and was not given any such notes.

4. By letter dated March 21, 2006, the Government advised Alexander's attorney that it would provide Alexander's post-arrest statements the following day; on March 22, 2006, the Government sent Fineman a Federal Express package for delivery on March 23, 2006, containing 22 pages of material specific to his client. (See letters dated March 21, 2006 and March 22, 2006, attached hereto as Exhibit A). The first four pages of this 22-page discovery package consisted of the agent's typewritten memorandum of Alexander's post-arrest statements and a written and signed Miranda waiver form. (The latter documents, which were labeled NA-100 through NA-103, are attached hereto as Exhibit B).

5. Not long after Alexander's arrest on February 9, 2006, I had a conversation with Fineman in which the topic of Alexander's possible cooperation was raised. Fineman later contacted me to advise me that cooperation would be unlikely as Alexander claimed to be innocent of the charges and therefore could not admit his own criminal conduct to the Government or discuss that of any co-defendants.

6. Although I spoke with Fineman on several occasions, I do not recall speaking with him on "numerous" occasions about the defendant's post-arrest statements. In discussing the

possibility of cooperation, I did mention to Fineman that Alexander had been cooperative and had made statements, and I informed him of the substance of those statements. In addition, I believe that when Fineman informed me that his client was asserting his innocence, I reminded Fineman of the substance of Alexander's post-arrest statements, which certainly appeared to be untruthful.

7. I have no recollection of Fineman raising the possibility of deferred prosecution for his client; I am certain that I did not promise it or even myself raise it in any way.

8. Rather, Fineman informed me that his client claimed innocence, and wished to persuade the Government of that fact. Truthfully responding that the Government is not interested in the prosecution of innocents, I provided Fineman and his client with the opportunity to proffer Alexander's claims of innocence to the Government at a meeting scheduled for March 29, 2006.

9. Present at the March 29, 2006 proffer were myself, ICE Special Agents Erik Rosenblatt (the case agent) and Ruben Correa (one of the arresting agents), Fineman, and defendant Alexander. Special Agent Correa was identified both by name and as one of the agents who arrested the defendant and took his post-arrest statement, and Alexander acknowledged that he recognized him as such. At the proffer, I explained that Alexander was more than welcome not to speak with the Government, but if he wanted the

opportunity to attempt to persuade the Government of his innocence, the meeting would proceed under the Office's standard "innocence proffer" agreement. Fineman informed me that he was a former prosecutor familiar with such arrangements, and, eager to establish Alexander's "innocence," Fineman and his client readily proceeded under that agreement. (The proffer agreement governing that meeting is attached hereto as Exhibit C).

    10.   Prior to signing the proffer agreement, Alexander and Fineman had ample opportunity to discuss it (outside of the Government's presence), and I explained to them in detail its terms and ramifications. Both stated that they fully understood the agreement, including that any statements made in, or leads developed from, the meeting could be used by the Government against Alexander in any way at any time and that he could not later move for suppression of those statements or that evidence. Fineman and Alexander both signed the agreement, again indicating that they understood the terms and consequences of the agreement. I also signed the agreement, as did Special Agents Rosenblatt and Correa, as witnesses that the agreement had been explained and signed in their presence. Proceeding under that agreement, Alexander then made numerous statements to the Government. (Special Agent Rosenblatt's notes (both in the form of handwritten notes and a typed memorandum) of that meeting are attached hereto as Exhibit D).

11. Following the March 29, 2006 meeting, the Government conducted a follow-up investigation based upon certain information provided by Alexander. The Government determined that certain other information provided by Alexander was irrelevant to the charges in the Indictment.

12. After I received Alexander's motion papers (which referred to notes taken at his post-arrest interview), I specifically asked the agents to search for any handwritten notes of Alexander's post-arrest statements; the agents subsequently located a half-page of notes that Special Agent Ruben Correa wrote out in Alexander's presence during the post-arrest interview, and a half-sentence that the agent wrote following the interview. (Those handwritten notes are attached hereto as Exhibit E).

I declare under penalties of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated:   New York, New York
         June 21, 2006

                                    _____
                                    E. Danya Perry
                                    Assistant United States Attorney

CERTIFICATE OF SERVICE

I, E. Danya Perry, affirm under penalty of perjury as follows:

1.  I am an Assistant United States Attorney in the Southern District of New York.

2.  On June 21, 2006, I caused a copy of the foregoing Government's Affirmation In Opposition To Defendant Nathaniel Alexander's Omnibus Motion, along with attached exhibits, to be served by United States mail, postage pre-paid, by depositing same into the outgoing mailbox at the United States Attorney's Office for the Southern District of New York, on:

>   Michael Fineman, Esq.
>   305 Broadway, 7th Floor
>   New York, NY 10007
>   (212) 897-5823

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

_____
E. Danya Perry
Assistant United States Attorney
Telephone:  (212) 637-2434