United State District Court
Southern District of New York
------------------------------------------------------------------------ x
United States of America,

               -against-

Douglas Shyne,
Natasha Singh,                                                    S4 05 Cr. 1067 (KMK)
       AKA Beatris Rodrigues,
Christine Richardson,
       AKA Deokali C. Richardson,
Nathaniel Shyne,
Toybe Bennett,
       AKA Dmitriy Makarevich,
       AKA Dmitriy Makervich,
       AKA Eduardo Rodrigues,
       AKA Cecilio Pena,
Roberto Montgomery,
Ephraim Richardson,
Naresh Pitambar,
Jason Watler,
Steven Riddick,
Nathaniel Alexander, and
Timothy Montgomery,

       Defendants.


------------------------------------------------------------------------ x


## MEMORANDUM OF LAW IN FURTHER SUPPORT DEFENDANT'S OMNIBUS MOTION AND IN REPLY TO THE GOVERNMENT'S OPPOSITION

                                                        The Law Office of Michael Fineman, Esq.
                                                        *Attorney for the Defendant*,
                                                        Nathaniel Alexander,
                                                         305 Broadway, 7th Floor
                                                        New York, New York 10007
                                                        (212) 897-5823

## PRELIMINARY STATEMENT

This reply memorandum of law, accompanied by Michael Fineman's reply affirmation, is in further support of the defendant's motion for **(1)** for suppression of all statements procured in violation of the defendant's right against self incrimination, the defendant's right to an attorney, and as a result of grave prosecutorial misconduct under the Fifth and Sixth Amendments to the Constitution of the United States of America; **(2)** for dismissal of the indictment for violation of the defendant's fundamental right to due process of law as a result of grave prosecutorial misconduct under the Fifth Amendment to the Constitution of the United State of America; **(3)** to order the government attorney to disclose the grand jury testimony of Special Agent Erik Rosenblatt, ICE Office of investigations, Department of Homeland Security, other agents and witnesses under provisions of Fed. R. Crim. P. 6(e)(3)(C)(i) and (ii); **(4)** for dismissal of the indictment for failure to state a cause of action under Fed. R. Crim. P. 12(3)(B); **(5)** an order compelling the government attorney turn over any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent under Fed. R. Crim. P. 16(a)(1)(B)(ii) not provided thus far; **(6)** under Rule 104(a), for a hearing to determine the existence of a conspiracy Fed. R. Evid; and **(7)** to grant defendant's motion in limine precluding the government from asserting deliberate ignorance, or introducing evidence of the defendant's financial situation.

## STATEMENT OF FACTS

Rather than reasserting the our factual allegations, the defendant and I would respectfully request that this Honorable Court refer to the defendant's initial motion, submitted by my affirmation (with supporting documentation), as well as my affirmation in further support of the defendant's motion and in reply to the government's opposition papers.

**POINT I: A HEARING IS NECESSARY REGARDING DEFENDANT'S POST ARREST STATEMENTS; HOWEVER, THESE STATEMENTS MUST BE SUPPRESSED NOT ONLY FOR FIFTH AMENDMENT REASONS, BUT IN LIGHT OF THE SIXTH AMENDMENT AS WELL**

In her opposition memorandum, Ms. Perry argues that a hearing is necessary to address the defendant's allegations that he was interrogated and a statement was procured prior to a valid waiver of his rights under the doctrine of Miranda. The defendant joins in Ms. Perry's motion for a hearing.

What Ms. Perry fails to argue in her 55 page memorandum of law, is how the defendant's post-arrest statement could be constitutional in light of the Sixth Amendment right to counsel. Ms. Perry makes no argument or cites to any legal precedent which would justify admission of Mr. Alexander's post-arrest statement in light of the Sixth Amendment; thus, the government should be precluded from asserting an argument on these grounds. As urged in my initial moving papers, in addition to the protections against self incrimination guaranteed by the Fifth Amendment in the context of a custodial interrogation, "[t]he Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v.

U.S., 540 U.S. 519, 124 S.Ct. 1019 (2004) [quoting from Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)]. The Fellers Court further stated that, "[w]e have held that an accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents ... deliberately elicited from him after he had been indicted and in the absence of his counsel.'" Fellers, at 523, citing to Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

  Here, as Ms. Perry states, "Nathaniel Alexander was arrested at his home in Portsmouth, Virginia on February 9, 2006, based upon charges contained in the Second Superseding Indictment in this case, returned by a grand jury on February 8, 2006." Perry's affirmation, page 2, ¶ 2. Thus, the defendant was arrested subsequent to the being indicted. There is no doubt that judicial proceedings had been commenced at the time of the defendant's arrest; therefore, the defendant Sixth Amendment right to an attorney had attached, and had been violated by agent Correa's conduct.

  Ms. Perry dismisses the defendant's allegations that his Fifth Amendment rights had been violated; however, does not set forth any facts or information as to why the time on the Miranda Waiver was changed. Additionally there is no information concerning the time of Ms. Perry's discovery of this highly unusual change, what Ms. Perry did to find out why the change was made, or any legal argument citing to precedent that would forgive such a governmental transgression. Rather, Ms. Perry simply dismisses this information outright without any comment on it.

  Ms. Perry asserts that the defendant's statements procured at the March 29, 2006 meeting should be admissible. Firstly, Ms. Perry asserts that there is no poisonous tree by dismissing my allegations of misconduct (which will be discussed below in Point II). Again, Ms. Perry does not discuss any factual information which would tend to explain agent Correa's conduct of changing the time on the Miranda Waiver, or cite to any case in support of her position. The defendant has asserted that this Honorable Court should evaluate the admissibility of the information derived at the March 29, 2006 meeting in light of the "purpose and flagrancy" of governmental misconduct. See Kaupp v. Texas, 538 U.S. 626, 633, 123 S.Ct. 1843, 1847 (2003). Under a "purpose and flagrancy" analysis, the Supreme Court has held, "[w]hen a police officer intentionally violates what he knows to be a constitutional command, exclusion is essential to conform police behavior to the law. Such a 'flagrant' violation is in marked contrast to a violation that is the product of a good-faith misunderstanding of the relevant constitutional requirements." New York v. Harris, 495 U.S. 14, 23-24, 110 S.Ct. 1640, 1646 (1990).

  Here, it is not merely misconduct by a police officer or federal agent that is at issue. It is the conduct of the Federal Prosecutor, an attorney, that should control the analysis of the "purpose and flagrancy" of governmental conduct. As discussed in my reply affirmation, Ms. Perry had a strong interest in Mr. Alexander's cooperation in light of the weakness of her case as against him and the two other Virginia defendants. Her only witness who can allegedly testify as to the Virginia defendants' knowledge of and participation in the conspiracy is a convicted drug dealer who has a history of cooperating with the government when facing lengthy prison sentences. Can there be a more untrustworthy individual to stake an entire prosecution on. Not only does Ms. Perry attempt to down play her interest in Mr. Alexander by calling to the Court's

attention evidence that she knows is extremely unreliable, but Ms. Perry crosses the line when she lies about the content of our conversations concerning Mr. Alexander's cooperation.

Firstly, Ms. Perry states in her affirmation that, "I have no recollection of Fineman raising the possibility of deferred prosecution for his client; I am certain that I did not promise it or even myself raise it in any way." (Perry's affirmation, page 4, ¶ no. 7). Secondly, Ms. Perry states that, "[a]bsolutely no promises were made to the defendant to 'entice' him into a meeting with the government." (Perry's opposition, page 28). For clarity's sake, it is important to note that the first statement is sworn to in Mr. Perry's affirmation while the second statement was only made in her memorandum of law; thus, is not a sworn statement.

As discussed at length in my reply affirmation, Ms. Perry's claims that she made no promises to entice Mr. Alexander to attend the March 29, 2006 meeting are absurd. Ms. Perry was actively seeking Mr. Alexander's cooperation in this matter because she knew that Anthony Prince was the weakest link in her case as against the Virginia defendants, and if Mr. Alexander agreed to cooperate, she would have a much stronger case against two world famous athletes. It was Ms. Perry who suggested the "innocent proffer," not me as she would have this Honorable Court believe, and the reason is obvious. Ms. Perry knew that Mr. Alexander's post arrest statement was unconstitutionally procured, and that it might be suppressed should its unconstitutionality come to light; therefore, the only way to enhance her case was to perpetrate this fraud and have Mr. Alexander provide information – while not directly inculpating himself – that allowed the government to fill in certain deficiencies in their case.

Thus, the purpose of Ms. Perry's conduct was to seek to punish Mr. Alexander without producing the evidence against him by the government's own independent labors, but rather by the cruel, simple expedient of compelling it from his own mouth. See Miranda v. Arizona, 384 U.S. at 460, 86 S.Ct. at 1620 (1966). The flagrancy of Ms. Perry's conduct cannot be in doubt. As stated in the defendant's initial moving papers, Ms. Perry's conduct was fraudulent, and violated the Disciplinary Rules of the State of New York governing attorney conduct. Ms. Perry acknowledges that at least on one occasion, "[i]n discussing the possibility of cooperation, I did mention to Fineman that Alexander had been cooperative and had made statements, and I informed him of the substance of those statements." Perry affirmation, pages 3 – 4, ¶ 6. Since Ms. Perry must have been aware of the change of time on the Miranda Waiver (a point she chooses not to address), she new of its unconstitutional nature. For argument's sake, even if changing the time was a completely innocent act, it raises serious questions about the constitutionality of the statement, and creates an unavoidable possibility of suppression. In applying the "purpose and flagrancy" analysis to the conduct surrounding the March 29, 2006 meeting, this Honorable Court should hold that the government is precluded from eliciting this unconstitutionally procured information in a trial against the defendant.

Ms. Perry attempts to argue that Mr. Alexander waived his right to bring this motion as a result of the "innocent proffer" agreement that Mr. Alexander and I signed. To dispense with this argument, one only needs to examine New York State contract law. Under New York law, where there is fraud in the inducement with respect to an agreement, this renders the agreement voidable. "This form of fraud is usually based on facts occurring prior or subsequent to the execution of a contract which tend to demonstrate that an agreement, valid on its face and properly executed, is to be limited or avoided." Mix v. Neff, 99 A.D.2d 180, 182-183, 473

N.Y.S.2d 31, 33 (3rd Dep't, 1984); see also Mangini v. McClurg, 24 N.Y.2d 556, 563, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969).

"[W]here a defendant has fraudulently and positively as with personal knowledge stated that something was to be done when he knew all the time it was not to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur. Such statements and representations when false are actionable." Channel Master Corp. v. Aluminum Limited Sales, Inc., 4 N.Y.2d 403, 407, 151 N.E.2d 833, 836-836, 176 N.Y.S.2d 259, 263 (1958).

Here, Ms. Perry knew that she would never investigate any information provided to her with an eye towards dismissal. Those promises were completely fraudulent. Now Ms. Perry is intentionally misleading the Court by stating that, "[a]bsolutely no promises were made to the defendant to 'entice' him into a meeting with the government." (Perry's opposition, page 28). What would the purpose of providing the government with exculpatory information if the government made no representations that they would do anything with that information. Ms. Perry promised to conduct an investigation concerning the information provided, and if the information was true, to dismiss the charges as against Mr. Alexander. Ms. Perry made these promises knowing that she had no such intention. Ms. Perry dismisses the information provided as irrelevant in her papers in a vain attempt to justify her failure to live up to her end of the bargain, but she fails to inform the Court of the substance of that information. I respectfully request that the Court refer to my reply affirmation for details of the information provided to the government at the March 29, 2006 meeting.[1]

"It is well-settled that when the a [sic] defendant waives rights in reliance upon a government promise, due process requires that the defendant be entitled to have the government held to its end of the bargain. *** Likewise, a suspect's post-arrest statements may be deemed involuntary if induced by the government's unfulfilled or unfulfillable promises." U.S. v. Heatley, 1999 WL 61816, 8 (S.D.N.Y.,1999). See also United States v. Ruggles, 70 F.3d 262, 265 (2d Cir.1995) [Material misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will.]; United States v. Fisher, 700 F.2d 780, 783 (2d Cir.1983). [Shotwell Manufacturing Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963), reminds us that "evidence of guilt induced from a person under a governmental promise of immunity ⋯ must be excluded under the Self-Incrimination Clause of the Fifth Amendment⋯. Evidence so procured can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion."].

Here, the defendant's statement procured during the March 29, 2006 meeting was made in reliance not only on the government's representation, but on an attorney's representations that a good faith investigation would be conducted, and if that investigation confirmed the information provided, the government would dismiss the charges as against Mr. Alexander. The government's promise was not only unfulfilled, but completely ignored by Ms. Perry in that no

---

[1] The same information is included in agent Rosenblatt's notes, included with Ms. Perry's opposition papers.

investigation what so ever was conducted; therefore, the government must be precluded from using this statement against the defendant.

### Point II: THE GOVERNMENT HAS FAILED TO ADDRESS THE DEFENDANT'S ALLEGATIONS OF PROSECUTORIAL MISCONDUCT

#### 1.     Ms. Perry's Failure To Disclose The Agent's Constitutional Violation.

Ms. Perry argues that the indictment should not be dismissed because there was no prosecutorial misconduct; however, she does not support her argument with facts or law. As discussed above, Ms. Perry discards the defendant's argument that his Miranda Rights were violated without providing any information to lead one to conclude otherwise. Ms. Perry further claims that the illegally obtained statements were not used in a judicial context, generally citing to United States v. Patane, 542 U.S. 630 (2004). Patane, was a plurality opinion with four dissenters, and the primary issue was whether suppression of physical evidence was appropriate were a defendant made an unwarned statement to law enforcement about where the physical evidence could be found but that statement was not introduced at trial.

Here, the unconstitutionally procured information from the March 29, 2006 meeting has found its way into the government's most recent indictment.[2] As asserted in the defendant's initial moving papers, dismissal of the indictment is appropriate where continuing prejudice from the constitutional violation cannot be remedied by suppression of the evidence. U.S. v. Morrison, 449 U.S. 361, 365-66 n. 2, 101 S. Ct. 665, 668, 66 L. Ed. 2d 564 (1981); United States v. Rogers, 751 F.2d at 1078. Here, the very foundation of the government's allegations were derived through prosecutorial misconduct in violation of the Fifth Amendment's Due Process clause; thus, the indictment itself is tainted by unconstitutionality and must be dismissed.  See United States v. Marshank, 777 F.Supp. 1507 (N.D.Cal.,1991); see also U.S. v. Sabri,  973 F.Supp. 134, (W.D.N.Y., 1996) [Dismissal of an indictment for outrageous government conduct, although rare, is permissible.].

#### 2.     Ms. Perry's Failure To Disclose Required Documents.

In her opposition memorandum of law, and in her affirmation, Ms. Perry claims that, "the Government was not informed of the existence of those notes [of agent Correa] until after Alexander had filed his motion." Perry's opposition, page 25, and Perry affirmation, pages 2-3, ¶ 3.

Fed. R. Crim. P. 16(a)(1)(B)(ii "provides that, upon a defendants' request, the government must produce 'the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent.' The rule plainly requires production of 'any written record' containing statements made during

---

[2] It must be noted that it appears that there was a third superseding indictment which has not been unsealed or provided to the defendants in this matter.

interrogation and is 'not limited to a typed, formalized statement' or 'a verbatim or near-verbatim transcription.'" U.S. v. Stein, 2006 WL 891111, 5 (S.D.N.Y., 2006).

In this case, discovery was being produced voluntarily and without the need for discovery motions. Under these circumstances, Ms. Perry should have turned the agent's notes over without the need for a demand. I was able to correctly deduce that there were missing notes merely be noticing that the typed memorandum of agent Correa was prepared more than a month after the defendant's arrest. Ms. Perry would have this Court believe that she, an experienced prosecutor, was unaware that an agent would take notes during an interrogation. This proposition is nonsensical, and I am still not satisfied that all of agent Correa's materials have been provided. Mr. Alexander affirmed that he was offered a prepared statement to sign contemporaneously with the Miranda Waiver form.[3] The government has still not provided any prepared statement.

### 3.     Ms. Perry Redacted The Names Of The Agents To Cover Up Her Fraud.

Ms. Perry claims that she did nothing wrong by redacting the names of the witnesses to the Miranda Waiver, and attempts to justify this act by claiming that the defendant is not entitled to the identities of the government's witnesses under the rationale of U.S. v. Bejasa, 904 F.2d 137 (2d Cir., 1990), and U.S. v. Cannone, 528 F.2d 296 (2d Cir., 1975).

Ms. Perry's first error is classifying these people as government witnesses. To give her the benefit of the doubt, in the event that should this Honorable Court hold that Mr. Alexander's post arrest statement is admissible, then agent Correa may be called at trial to testify as to that statement. I sincerely doubt that agent Correa has the capacity to testify as to the substance of the alleged conspiracy beyond providing information about the post-arrest statement. As for the individual who witnessed the Miranda waiver, what possible additional information could that person provide beyond the voluntariness of the waiver? In U.S. v. Bejasa, *supra*, the issue was that the defendant contended that he was not accorded a fair trial because the Government denied him access to the main government witnesses in the case. See Bejasa, at 139. How is the person who witnessed a Miranda Waiver a main government witness? Additionally, in Bejasa, the defendant knew "who the witnesses would be, had dealt with them before, and, presumably, either already knew their addresses and phone numbers…." Bejasa, at 140. This is not the case here, the defendant does not know the identity of the individual who witnessed the execution of the Miranda Waiver.

In United States v. Cannone, *supra*, the issue presented was "whether, given the particular circumstances of this case, the court was within the allowable scope of its discretion when it ordered disclosure of the identity of the government's witnesses." Cannone, at 301. The Second Circuit found that the trial Court did exceed the scope of its discretion; however, this was a case where the defendants were already charged with beating a grand jury witness, and attempted to influence witnesses. See Cannone, at 298. The person who witnessed the execution of the Miranda Waiver is presumably a federal agent, not a civilian witness.

---

[3] See **Exhibit B**, annexed to defendant's initial moving papers.

The Court in <u>Bejasa</u>, held that, "in the absence of 'a *specific* showing that disclosure was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case,' the district court could not be said to have abused its discretion in not compelling such disclosure. <u>Bejasa</u>, at 140. (Citations omitted, emphasis in original). In light of the change of time to the Miranda Waiver, which is plainly visible on the face of the document, the defense needs to be able to procure and exam the witness to the execution of the document. Can this be a more specific and material issue concerning the defendant's post-arrest statement. As usual, Ms. Perry belittles the request, cites no relevant authority concerning the issue, and simply ignores the reason that everything alleged in this motion came to light, a doctored Miranda Waiver.

### 4. **Ms. Perry Did Entice The Defendant To Attend The March 29, 2006 Meeting.**

Ms. Perry states that, "[t]his half-cocked allegation [that she promised to investigate the information provided to her knowing that she had no such intention] is belied by common sense as well as by the facts. Absolutely no promises were made to the defendant to 'entice' him into meeting with the government." <u>Perry's opposition</u>, page 28. Ms. Perry's claims that she made no promises to entice Mr. Alexander to attend the March 29, 2006 meeting are absurd. What would the purpose of providing the government with exculpatory information if the government made no representations that they would do anything with that information.

As discussed in my reply affirmation, although she may deny it now, Ms. Perry knows Mr. Alexander is perhaps the least important and most difficult to link defendant in this case. However, if he were involved in the conspiracy he would have the most to offer with respect to procuring a conviction as against Mr. Riddick and Mr. Montgomery, two former Olympic Gold Medalists. The government's case as against the three Virginia defendants has one glaring weakness; the government's only witness which they claim can tie the Virginia defendants to the conspiracy is Anthony Prince, a convicted felon with a history of cooperating with the government in order to get out of prison.

Ms. Perry was actively seeking Mr. Alexander's cooperation in this matter because she knew that Mr. Prince was the weakest link in her case as against the Virginia defendants, and if Mr. Alexander agreed to cooperate, she would have a much stronger case against two world famous athletes. Additionally, the government's case against Mr. Alexander was and is wholly insufficient without using his own words against him; simply looking at the documents which Ms. Perry touts so highly demonstrates her disingenuousness with respect to this point. (See **Exhibit B,** annexed to the reply affirmation). It was Ms. Perry who suggested the "innocent proffer" when I informed her that Mr. Alexander could not cooperate because he claims innocence and has no information which could help the government.  Ms. Perry knew that Mr. Alexander's post arrest statement was unconstitutionally procured, and that it might be suppressed should its unconstitutionality come to light; therefore, the only way to enhance her case was to perpetrate this fraud and have Mr. Alexander provide information – while not directly inculpating himself – that allowed the government to fill in certain deficiencies in their case against him.

As argued above, the very foundation of the government's allegations in indictment labeled "S4" were derived through prosecutorial misconduct in violation of the Fifth

Amendment's Due Process clause and New York State law governing attorney conduct; thus, the indictment itself is tainted by unconstitutionality and must be dismissed. See United States v. Marshank, *supra*.

### 5. Ms. Did Abuse Her Position With The Grand Jury.

Ms. Perry states, "[t]o begin with, Alexander was indicted prior to any alleged misconduct. Nonetheless, Fineman argues that my deceitful conduct was done because I '[knew] that the first [sic]superseding indictment charging the defendant was insufficient.'" Perry opposition, page 32.

In support of her position that the first indictment charging Mr. Alexander was procured by independent, competent evidence, Ms. Perry points to certain SunTrust Bank records and a deposit slip that she states were in her possession prior to Mr. Alexander's arrest. Ms. Perry states that "those records **make clear on their four corners** that Alexander himself filled out the deposit ticket and opened the bank account for the purpose of depositing the check." Perry opposition, page 33 (**emphasis added**). Since Ms. Perry chose not to provide the Court with the actual documents which she so cavalierly touts, I have included the documents as an exhibit (annexed to the reply affirmation as **Exhibit B**). There is absolutely nothing contained in the deposit slip or the remaining which demonstrates that Mr. Alexander deposited the $850,000 into his account. The deposit slip contains neither his signature, nor his name. If Ms. Perry presented this document to the grand jury and represented that it had been executed by Mr. Alexander without any additional support, then she clearly mislead the grand jury about her information about the document.

The grand jury in this matter must have been presented with a great deal of information, after all, there were eleven defendant indicted by the grand jury in the indictment labeled "S2." Based on Ms. Perry's failure to point to any other evidence besides the deposit slip, it must be concluded that there was no additional information provided to the grand jury about Mr. Alexander's conduct besides the information derived from the notorious Mr. Prince. Ms. Perry has not, and will not claim that Mr. Prince witnessed the execution of the deposit slip.

Additionally, in indictment "S2," the grand jury charged Mr. Alexander in connection with a transaction which he had absolutely nothing to do with. In paragraphs cc. and dd. on page 9, indictment "S2" discussed a check for $175,000 allegedly negotiated by Christine Richardson. On page fourteen, count five of indictment charges Mr. Alexander in relation to this $175,000 check, even though it appears that there was no evidence presented concerning Mr. Alexander's connection to this check.

In indictment "S4," the $175,000 check is discussed on page 18, and forms the basis for count seven on page 28, where only defendants Shyne and Singh are charged. This is not merely a "stylistic" change as Ms. Perry would have this Court believe. Clearly, the grand jury indicted Mr. Alexander without any evidence with respect to the $175,000 check in indictment "S2"; therefore, there is a distinct possibility that the entire indictment (S2) as against Mr. Alexander was without basis. Under the circumstances, I submit that I have made a showing that although there was a true bill as to Mr. Alexander in indictment "S2," it does not necessarily flow that sufficient accusatory evidence was presented. Indictment "S4" also charges Mr. Alexander in

connection with a $150,000 check. The government did not even know that check existed prior to the March 29, 2006 meeting.

In any event, an in camera inspection of all the grand jury minutes in this matter,[4] as they relate to Mr. Alexander, would affirmatively dispel any speculation about the propriety of Ms. Perry's conduct before the grand jury.

Ms. Perry argues that the grand jury proceedings are secret, and I have not made a showing for a particularized need to contravene said secrecy. The defendant further asserts that the grand jury transcripts in this case should be turned over for use by the defendant to advance his claim of prosecutorial misconduct. As discussed in the defendant's initial moving papers, to obtain a court order under the (C)(i) exception for production of the grand jury transcripts under "particularized need" analysis, a three part balancing test has been delineated in Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 222, 99 S. Ct. 1667, 1674, 60 L. Ed. 2d 156 (1979) as follows: (1)Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that their request is structured to cover only material so needed.

The material the defendant herein seeks is needed to avoid a possible injustice, in that he is being accused of a federal crime where there was no basis to charge him in the first instance, and he is now charged by an indictment in "another judicial proceeding" that was procured through prosecutorial misconduct and fraud in violation of the defendant's Constitutional Right to due process pursuant to the Fifth Amendment. The opportunity to contrast the transcripts of indictment "S2" and "S4" and possibly "S3" will demonstrate to what extent Ms. Perry was able to improve her case by use of the information in the March 29, 2006 meeting; thus, demonstrating affirmatively the motive for her fraud.

Additionally, Mr. Prince is in federal custody in Virginia, and it does not appear that he personally testified before the grand jury in this matter. It must be then concluded that his testimony was introduced through a proxy. "We have previously condemned the casual attitude with respect to the presentation of evidence to a grand jury manifested by the decision of the Assistant United States Attorney to rely on testimony of the law enforcement officer who knew least, rather than subject the other officers, or himself, to some minor inconvenience." U.S. v. Estepa, 471 F.2d 1132, 1135 -1136 (2d Cir., 1972). To the extent that Mr. Prince's testimony was introduced as hearsay, that may, in and of itself, be grounds for dismissal because the government is attempting to limit the creation of Jenks Act and Brady-Giglio material with respect to their main witness. See generally Estepa, *supra*.

Furthermore, the defendant will eventually be entitled to most, if not all, the grand jury minutes under the Jenks Act and the Brandy-Giglio doctrine. Even if a witness does not testify at trial, if the government possesses favorable evidence concerning that witness, they have an obligation to turn it over. See U.S. v. Jackson, 345 F.3d 59 (2003), 70 -71 (2d Cir., 2003).

---

[4] I respectfully request that the Court review the transcripts of indictment S2, S4, and S3. It appears that there has been an indictment procured, but not unsealed between S2 and S4.

"'Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness.'" <u>Jackson</u>, at 70 (citing <u>In re United States</u>, 267 F.3d at 139; <u>and</u> <u>Giglio v. United States</u>, 405 U.S. 150, 153-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). Thus, the need for secrecy is a dubious argument at best.

  Ms. Perry cannot assert that the need for secrecy exists to protect the identity of CC-1 either. Ms. Perry told me his name long ago in our conversations about Mr. Alexander's cooperation, and as demonstrated by the information provided in my reply affirmation, the defendant and I now know Mr. Prince's identity, and his character for truthfulness. There is no further justification to keep the minutes secret. If our allegations about Ms. Perry's conduct before the grand jury are false, Ms. Perry should be happy to provide the Court with information to clear her name should the Court order her to do so.

  It is readily conceded that no one act that I accuse Ms. Perry of committing, standing alone, necessarily demonstrates misconduct; however, when viewed in the "totality of the circumstances" and in light of the doctored Miranda Waiver, there can be no other explanation. <u>See generally</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 689, 113 S.Ct. 1745, 1751 (1993) [Indeed, we continue to employ the totality-of-circumstances approach when addressing a claim that the introduction of an involuntary confession has violated due process.]. If there were, I am confident that Ms. Perry would have provided the Court with an explanation that is not so nonsensical and absurd.

## CONCLUSION

  There can be no doubt that Ms. Perry wanted Mr. Alexander to cooperate and testify against Mr. Riddick and Mr. Montgomery in light of Mr. Prince's obvious character issues; for her to suggest otherwise is perjurious and in bad faith. Indictment S2 was wholly insufficient, and Ms. Perry knows that. This is why she induced Mr. Alexander, through fraud, to attend the March 29, 2006 meeting with the intention of procuring information which would fill in the gapping holes in her case. Everything else she did (e.g. mentioned a statement she knew was unconstitutionally procured, redacted names from the Miranda Waiver, withhold documents containing Mr. Alexander's statement, ect…) was done either for the purpose of inducing cooperation, or for the purpose of having Mr. Alexander provide evidence to be used against himself at the meeting.

Dated: New York, New York,
   June 30, 2006

               Law Office of Michael Fineman, Esq.

               By: _____/s/_____
                 Michael Fineman, Esq. (MF 0282)
                 *Attorney for Defendant,*
                 Nathaniel Alexander,
                 305 Broadway, 7th Floor
                 New York, New York 10007
                 (212) 897-5823