UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --x

UNITED STATES OF AMERICA                                :

      - v. -                                          :

                                          :

DOUGLAS SHYNE,                                          :
NATASHA SINGH,                                          :
    a/k/a "Dirty Rodrigues,"                           :
NATHANIEL SHYNE,                                        :
TOYBE BENNETT,                                          :
    a/k/a "Dmitriy Makarevich,"        :        CASE NO.: S4 05 CR 1067 (KMK)
    a/k/a "Dmitriy Makervish,"                         :
    a/k/a "Eduarado Rodrigues,"                        :
    a/k/a "Cecilio Pena,"                              :
ROBETO MONTGOMERY,                                      :
EPHRAIM RICHARDSON,                                     :
NARESH PITAMBAR,                                        :
JASON WATLER,                                           :
STEVEN RIDDICK,                                         :
NATHANIEL ALEXANDER, and                               :
TIMOTHY MONTGOMERY,                                     :
                                          :

          Defendants.                                  :

-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --x

**JOINT MOTION FOR SEVERANCE OF DEFENDANTS
TIMOTHY MONTGOMERY, STEVEN RIDDICK,
AND NATHANIEL ALEXANDER**

      Defendants Timothy Montgomery, Steven Riddick, and Nathaniel Alexander

(hereinafter, the "Virginia Defendants,") hereby move this Court to sever the charges pending

against them in the Superseding Indictment from the counts against the other defendants in this

matter.

      Severance of the Virginia Defendants in this large conspiracy case is justified on several

distinct legal and factual bases. The allegations against the Virginia Defendants are temporally

and geographically distinct from those against the other defendants (hereinafter the "New York

Defendants"). Further, the allegations against the Virginia Defendants are also substantially less serious than those against the New York Defendants; the Virginia Defendants are alleged to have participated in the charged conspiracy for a period of only three (3) months and obtained a mere fraction of the proceeds allegedly obtained by the New York Defendants. The disparity of evidence and easy segregation of the allegations lodged against the Virginia Defendants creates severe prejudice to the Virginia Defendants in a joint trial. That prejudice requires a severance pursuant to Fed. R. Crim. P. 14 (a).

A severance is also necessary to preserve the Virginia Defendants' statutory and constitutional rights to a speedy trial. Acknowledging this Court's explicit findings of excludable time from the speedy trial calculation, the Virginia Defendants have a right to a trial well before the currently scheduled trial date of April 2, 2007. 18 U.S.C. § 3161 *et seq.* A continuance of the trial of these defendants beyond the statutory speedy trial period will create a substantial hardship on defendants Montgomery and Riddick, who are public figures and have had their personal and professional reputations severely damaged by the published allegations of this case. Defendant Alexander is a government contractor and delay of this trial until April, 2007 will likely put him out of business permanently, even when acquitted. These defendants' Sixth Amendment rights to speedy trial will also be violated if they are forced to wait until April 2007 for trial. The Virginia Defendants therefore respectfully request that the Court grant them a prompt, separate trial in 2006 of the charges presented against them in the Fourth Superseding Indictment.

In support of the instant Motion, the Virginia Defendants offer the following points and authorities, as well as any additional points and authorities which may be offered at any hearing on this Motion.

## I.    Factual Background

As alleged in the pending Superseding Indictment, this case involves a fraud conspiracy

orchestrated in New York. The two leaders of the alleged conspiracy were defendants Douglas

Shyne and Natasha Singh, both of whom "were in the business of procuring fraudulent checks."

Superseding Indictment at 3 (hereinafter "Indictment"). The Indictment alleges that defendants

Shyne and Singh obtained through fraudulent means checks written by various individuals.

Defendants Shyne and Singh, along with other individuals in New York, altered the checks by

modifying the amounts and payees. They stole the identities of unknowing victims and opened

bank accounts in their names. They then deposited or arranged to be deposited the altered checks

in those and other bank accounts, from which they ultimately obtained cash or made payments

on consumer goods. Through their conspiratorial conduct, the defendants are alleged to have

illegally obtained in excess of $5 million, between December 2002 and their arrest in August of

2005.

The Virginia Defendants are alleged to have participated in the charged conspiracy for

only 3 months -- from March 2005 until May 2005. As the Indictment plainly states, the

Virginia Defendants were allegedly connected to the New York Defendants by only one small

link – an unidentified individual referred to in the Indictment as "CC-1." The Indictment alleges

that "CC-1 served as a broker between [the New York Defendants] and TIMOTHY

MONTGOMERY, STEVEN RIDDICK and NATHANIEL ALEXANDER in the Norfolk,

Virginia area." Indictment at 4. The unnamed coconspirator CC-1 agreed with the lead New

York Defendant to "seek individuals willing to deposit fraudulently obtained checks into their

accounts." Id. The Indictment goes on to allege that CC-1 arranged for the delivery of seven

counterfeit checks to the Virginia Defendants, each of which was presented for payment in

3

Virginia.  The Indictment alleges no other connection between the New York Defendants and the Virginia Defendants.  CC-1 is the sole link between the two distinct branches of this alleged conspiracy.

## II.    Procedural History

The first Indictment was filed on October 12, 2005.  Defendants Douglas Shyne and Natasha Singh were named in that indictment, along with Defendants Christine Richardson, Nathaniel Shyne and Toybe Bennett.  The allegations in that Indictment are limited to those defendants, whose conspiratorial conduct is alleged to have occurred strictly in New York.

On November 9, 2005, a Superseding Indictment was filed with this Court.  That Superseding Indictment added several counts against the previously named defendants and added an additional defendant, Roberto Montgomery (no relation to defendant Timothy Montgomery).

On February 8, 2006, a second Superseding Indictment was filed with this Court.  This second Superseding Indictment added 5 additional defendants but no additional charges.  It was in this February 2006 Indictment that two of the Virginia Defendants, Steven Riddick and Nathaniel Alexander were first charged.

The most recent Superseding Indictment in this matter was filed on April 26, 2006.  Only one new defendant was added to the conspiracy in this superseding Indictment - Timothy Montgomery.  Three new counts were also added.

Defendant Timothy Montgomery was first brought before this Court on May 3, 2006, when he appeared for arraignment.  On July 11, 2006, this Court held a hearing at which it set an April 2, 2007 trial date, heard one pending Motion and scheduled a status conference for September 15, 2006.

At the July 11, 2006 hearing, this Court indicated that it recognized the Virginia Defendants' situation was considerably different than that of the New York Defendants, and that a severance might well be warranted. Indeed, the Court set the status conference hearing on September 15, 2006 to further review the possibility of an earlier trial date for at least certain defendants. In an effort to obtain the speedy and fair trial to which they are entitled, and consistent with the Court's comments from the bench on July 11, the Virginia Defendants have prepared and submitted the instant Motion for Severance.[1]

### III.    A Joint Trial of the New York and Virginia Defendants in April of 2007 Would Severely Prejudice the Virginia Defendants.

The Virginia Defendants seek severance because of the substantial prejudice which will result from a delayed joint trial with the New York Defendants. The allegations in the Indictment allege two distinct conspiracies, connected by a single unnamed coconspirator. The allegations against the New York Defendants are substantially more serious than those against the Virginia Defendants, creating a risk of prejudicial spillover of the jury's consideration of the evidence introduced in a joint trial. Moreover, the joint trial cannot begin until April 2, 2007, which will cause severe prejudice to the Virginia Defendants by preventing or limiting their employment opportunities and (for Montgomery and Riddick) because of their status as public figures. The prejudice caused by the joinder of the New York and Virginia Defendants operates on many levels and justifies this Court severing the Virginia Defendants for a prompt trial.

### A.    This Court has Wide Discretion to Order a Severance.

The determination of whether to sever a criminal proceeding "is committed to the sound discretion of the district court, and its disposition is virtually unreviewable on appeal." *United*

---

[1]    This Motion for Severance is not untimely, as the Court recognized the basis for filing a severance motion at the July 11, 2006 status hearing, when, because of the prior commitments of counsel for the New York Defendants, trial could not be set before April, 2007.

*States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) (citing *United States v. Lasanta*, 978 F.2d 1300, 1306 (2d Cir. 1992)). The Court has "inherent power to sever trials in the interest of efficient judicial administration." *United States v. Nachamie*, 101 F. Supp. 2d 134, 151-152 (S.D.N.Y. 2002). This inherent power includes "almost unlimited discretion under Rule 14 to determine whether sufficient prejudice exists to warrant severance." *United States v. Gallo*, 668 F. Supp. 736, 745 (E.D.N.Y. 1987).

Rule 14 of the Federal Rules of Criminal Procedure governs requests to sever criminal charges and co-defendants. That Rule "recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." Fed. R. Crim. P. 14(a).[2] It specifically provides that:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Id.

The decision of whether to sever requires a balancing of various factors and a consideration of the totality of the circumstances. *See United States v. Carrasco*, 968 F. Supp. 948, 951 (S.D.N.Y. 1997) (granting a motion to sever in a drug conspiracy case based on consideration of the totality of circumstances including "Speedy Trial concerns, antagonistic defenses, evidentiary problems and spillover prejudice"). "There are no precise tests applicable

---

[2]     Fed. R. Crim P. 8(b) provides that:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.

While the instant severance motion is brought pursuant to Rule 14 (a), this Court's analysis of a possible severance necessarily includes a review of the joinder of the Virginia Defendants to the others charged in this Indictment.

to one or a combination of these factors [weighing into a severance inquiry] that can provide

foolproof resolution under Rule 14. . . None of the factors are dispositive . . . " *Gallo*, 668 F.

Supp. at 749.  Even if individual considerations would not be sufficient to justify severance in

and of themselves, severance may nonetheless be appropriate when all relevant considerations

are aggregated. Id. at 753; *Carrasco*, 968 F. Supp. at 952 (consideration of each factor justifying

severance "adds some weight to defendant's request when combined with all of the other

circumstances"); *United States v. Claytor*, 52 F.R.D. 360, 363 (S.D.N.Y. 1971) (disclaiming any

ironclad rules against severance).

Applying Rule 14(a), courts in this Circuit have imposed a requirement of prejudice to

justify severance.  "A defendant seeking severance must show that the prejudice to him from

joinder is sufficiently severe to outweigh the judicial economy that would be realized by

avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998)

(stating also that a Rule 14(a) motion "should only be granted if there is a serious risk that a joint

trial would either compromise a specific trial right of one of the defendants or prevent the jury

from making a reliable judgment about guilt or innocence").  As noted above, however,

prejudice is but one of several factors which this Court must consider in adjudicating the instant

motion.  A motion to sever turns on the balance between a defendant's rights and the efficient

administration of justice.

B.    The Alleged Conspiracy Actually Consists of Two Distinct
      Conspiracies With Limited Overlap.

Severance is appropriate where, as here, the evidence to be developed at trial presents

evidence of multiple conspiracies rather than a single, unified conspiracy. See e.g., *United States*

*v. Moon*, 1988 U.S. Dist. LEXIS 9306, *7-8 (N.D.N.Y. 1988) (internal citations omitted)

(granting a motion to sever because the facts underlying the charges against certain defendants

appeared unrelated to the charges pending against other defendants, that proof of those facts would not be necessary to convict the defendants seeking severance, and that the indictment thus alleged separate conspiracies). In *Moon*, the indictment alleged several conspiracies with one common participant. The trial court severed the counts on the defendant's motion, ruling that "'defendants charged with two separate—albeit similar—conspiracies having one common participant are not, without more, properly joined.'" *Id.* (quoting *United States v. Welch*, 656 F.2d 1039, 1049 (5th Cir. 1981)). The Court went on to find that severance was justified despite the fact that the charged allegations were of "'proximate or simultaneous conspiracies with one common conspirator.'" *Id.* at *11 (quoting *United States v. Levine*, 546 F.2d 658, 665 (5th Cir. 1977)).

If proven beyond a reasonable doubt at trial, the facts alleged in the pending Indictment will establish the existence of multiple conspiracies rather than a single, unified conspiracy. The Virginia Defendants are alleged to have participated in a conspiracy led by the New York Defendants with whom they have no association, other than the alleged common tie with an unnamed, unindicted coconspirator, CC-1. As noted above, the Indictment describes CC-1 as "a broker" between the Virginia Defendants and the other defendants. It further alleges that CC-1 agreed with one of the alleged New York ringleaders to "seek" and "arrange[]" for individuals outside the existing conspiracy to deposit fraudulent checks into their accounts, and that CC-1 convinced the Virginia Defendants to undertake such actions.

The distinct nature of these conspiracies is relevant to a prejudicial joinder analysis under Rule 14(a) because there is a risk that the limited conspiracy alleged against the Virginia Defendants will be conflated with the wider conspiracy alleged against the other defendants. The Virginia Defendants will be severely prejudiced by being forced to confront and distinguish

8

evidence introduced against the New York Defendants – evidence which would not be relevant in a severed trial. The tenuous linkage between the New York and Virginia Defendants and the overlapping but irrelevant evidence consequently creates severe prejudice for the Virginia Defendants in a joint trial, and justifies severance.

C.    The Virginia Defendants Are Substantially Less Culpable Than the New York Defendants.

The two conspiracies charged in the Indictment are not only distinct, they are also substantially different in terms of relative culpability. The allegations in the governing Indictment aver that the New York Defendants engaged in criminal conduct significantly more serious than that alleged against the Virginia Defendants. That disparity creates a great risk of additional prejudice in a joint trial and further justifies the Virginia Defendants' request for severance.

The Virginia Defendants have a specific right to be tried without the risk of the jury being tainted by prejudicial spillover from the evidence admitted against co-defendants that would not be admissible against them if tried alone. As stated by the *Zafiro* Court:

> [A] district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant . . . When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro v. United States*, 506 U.S. 534, 539 (1993). Accordingly, "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary." *Id.*

Although there is no hard-and-fast test for what constitutes prejudicial spillover, where a movant's co-defendants face a "mountain of evidence" as compared to the "paucity of evidence

9

against him," the disparity in volume of evidence alone is a consideration that weighs towards

severance. *Carrasco*, 968 F. Supp. at 952 (finding substantial prejudice and granting a motion to

sever in part based on the fact that the evidence against the moving defendant was relatively

small as compared to evidence against his co-defendants). The nature of the evidence and

charges they support are thus relevant considerations, and it is a valid basis for severance that the

movant's co-defendants face charges that are more serious than those pending against the

movant. *See also United States v. Gallo,* 668 F. Supp. 736, 750 (E.D.N.Y. 1987) (severance of

"peripheral" defendants justified where severed defendants were involved only in "discrete and

finite schemes" and "should not be burdened with the stigma of those more actively involved" in

the conspiracy alleged); *United States v. Claytor*, 52 F.R.D. 360, 363 (S.D.N.Y. 1971) (finding

that severance was justified where "the violent nature of the crime the co-defendant is charged

with in the count sought to be severed" differed markedly from the non-violent conspiracy

charged against the movant). In a case where certain defendants are not alleged to have joined

the conspiracy until late in its life and to have had only a minor role, "[p]rejudice is particularly

likely to occur" because "'the mounting proof of the guilt of one is likely to affect another.'"

*United States v. Gilbert*, 504 F. Supp. 565, 566 (S.D.N.Y. 1980) (quoting *United States v.

Branker*, 395 F.2d 881, 888 (2d Cir. 1968)) (granting severance where the "gradual accumulation

of evidence against the principal members of a conspiracy" made prejudice likely against "a

minor participant, lately come to the venture" involved in only some of the charges and a small

proportion of the evidence).

There is a tremendous disparity in the severity of the allegations against the Virginia and

New York Defendants. The conspiracy in which the New York Defendants allegedly engaged

involved affirmative theft – the procurement of legitimately written checks with the assistance of

affiliated bank employees. The New York Defendants then allegedly altered those checks by sophisticated means. They also committed identity theft, using the personal information of various unsuspecting victims. They also formed shell corporations for the purpose of laundering money over the course of nearly three years. In short, the allegations against the New York Defendants, if proven, demonstrate a long-term pattern of sophisticated, criminal activity which resulted in substantial profit.

The serious allegations against the New York Defendants stand in stark contrast to the allegations against the Virginia Defendants, whose alleged conspiratorial conduct was much more limited. The role attributed to the Virginia Defendants in the pending Indictment is objectively more passive than that of the New York Defendants, and involves substantially less provocative allegations. The Virginia Defendants are alleged to have received counterfeit checks from CC-1, their sole conduit to the New York Defendants. They then deposited or had deposited those counterfeit checks into various accounts. All but one of the checks did not clear. On the one check that cleared, they and other defendants (facilitated through CC-1) drew or received funds. The Virginia Defendants' entire alleged involvement occurred in a period of just three months. The Indictment essentially classifies them as end-users of the extensive bad check conspiracy which operated in New York.

The disparity in the volume and seriousness of the criminality alleged in this case against the New York and Virginia Defendants poses a significant risk that the jury will be unable to reach a fair determination of guilt or innocence against the Virginia Defendants in a joint trial, due to prejudicial spillover. In short, the Virginia Defendants are peripheral to the broad conspiracy alleged against the other defendants, and their case should be severed for separate trial because of the "'slow but inexorable accumulation of evidence of fraudulent practices' by

major conspirators which [has been] held to have fatally prejudiced minor participants" in

similar cases, particularly where much of the evidence involved stretched into periods well

before the movant was alleged to have joined a conspiracy. *Gilbert*, 504 F. Supp. at 566, 571

(quoting *United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965)). The Virginia Defendants will

also be forced to confront evidence which would be inadmissible in a severed trial. *Gallo*, 668 F.

Supp. at 750-751 (in a "serpentine" conspiracy case, "there will invariably be a great many

instances in which the court will at trial admit evidence as to some defendants but not others,"

and in a joint trial with both discrete and finite conspiracies and more "amorphous and

indefinite" conspiracies, the resulting prejudice can be cured only via "extraordinarily intricate

limiting instructions").

D.    The Virginia and New York Defendants Will Likely Present
      Directly Inconsistent, Antagonistic Defenses.

Another factor in adjudicating motions to sever brought pursuant to Rule 14(a) is the

possibility of antagonistic defenses. Although the Court in *Zafiros* disclaimed any bright-line

rule that the presence of antagonistic defenses mandates severance, it explicitly recognized a

"possible conflict between various defense theories or trial strategies" is one factor to be

considered in adjudicating motions to sever. 506 U.S. at 538-39; see also *Gallo*, 668 F. Supp. at

749. As explained in *Gallo*:

> A "simple showing" of some antagonism between defendants'
> theories of defense does not in and of itself require severance.
> *United States v. Carpenter*, 689 F.2d 21, 27-28 (2d Cir. 1982), . . .
> The incompatibility of defense theories and trial strategies,
> however, may significantly redound to the detriment of all, and
> thus may be considered as a factor in a Rule 14 severance
> analysis. And if the defenses reach a level of antagonism such that
> the jury must *necessarily* disbelieve the testimony offered on
> behalf of one defendant in order to believe the "core of testimony"
> offered on behalf of another, severance would be compelled at that

stage in the trial. *Id.* at 28 (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. 1981)).

*Id.* at 751 (emphasis in original); *see also Carrasco*, 968 F. Supp. at 952 (noting that while antagonistic defenses are not in and of themselves a grounds for severance, it is a ground that "adds weight" to a severance motion).

The United States Court of Appeals for the Second Circuit has upheld trial courts' granting of severance motions based on the presence of antagonistic defenses. In *United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991), the Court of Appeals stated that mutually exclusive or irreconcilable antagonistic defenses can require severance if "'the jury, in order to believe the core of the testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.'" *Id.* at 484 (quoting *United States v. Carpenter*, 689 F.2d 21, 28 (2d Cir. 1982). The proposition that severance is required where there are mutually exclusive, antagonistic defenses was reiterated in *United States v. Schwartz*, 2000 U.S. App. LEXIS 8842, *6-7 (2d Cir. 2000) (citing *Cardascia*, 951 F.2d at 484), a post-*Zafiro* case.

There is a strong possibility in the instant case that the Virginia Defendants may put forth a defense to these charges which directly conflicts with the defense of one or more of the New York Defendants. As detailed above, the great majority of conspiratorial activity in this case occurred in New York without the agreement, involvement or even awareness of the Virginia Defendants. Accordingly, the Virginia Defendants may not challenge the existence of the charged conspiracy. They may actually affirm the existence of a New York based conspiracy of which they, like others, were unknowing victims. Indeed, the facts averred in the Indictment suggest that the Virginia Defendants were targeted by CC-1 and the other New York Defendants as unwitting money launderers for the New York Defendants. Defendants Timothy Montgomery and Steven Riddick are particularly attractive "targets" of that conspiracy, as they

were public figures more accustomed to significant business opportunities of relatively large amounts.

The Virginia Defendants' potential "victimization" defense will conflict directly with any defense put forth by the New York Defendants. If the Virginia Defendants claim that they were targeted by the unindicted co-conspirator and/or their co-defendants, they will be directly at odds with the New York Defendants. The jury must disbelieve the Virginia Defendants in order to convict the New York defendants – precisely the dilemma which prompted a severance in *Carpentier*. The inconsistency of those defenses within a joint trial creates severe prejudice to both the New York and Virginia Defendants. As Courts have consistently held, such conflicts in defense strategy justify a severance of co-defendants with contrary defenses.

    E.    <u>All Three of the Virginia Defendants Will Suffer Unique Harm If Forced to Await Trial Until April 2, 2007.</u>

Each of the three Virginia Defendants has personal circumstances which exacerbate the prejudice of having to wait another 8 months for their day in court. Two of those defendants are public figures whose reputations have been besmirched and livelihoods impinged by the mere allegation of criminal activity. The third Virginia Defendant is a government contractor who cannot conduct his business with the pending criminal charges against him. All three of the Virginia Defendants will continue to suffer the prejudice created by those unique circumstances until the charges against them are adjudicated. Consequently, they need a severance and prompt trial of this matter.

Timothy Montgomery is an internationally renowned track-and-field athlete who for many years has competed at the pinnacle of his sport, around the world. While he resides in the Norfolk, Virginia and Raleigh, North Carolina areas, his notoriety is national and international. His athletic success has led to business opportunities, which he desires to pursue.

14

Steve Riddick has also been involved at the highest levels of track-and-field, as both an athlete and a coach. He was an Olympic gold medalist and internationally successful sprinter during his days of competition. Upon retirement, he became a successful coach. He has had an ongoing relationship with Tim Montgomery, having served as Montgomery's coach for much of Montgomery's very successful career. Riddick continues to coach world class sprinters, including Olympian Marian Jones. The pending charges restrict his ability to travel and coach his athletes. Riddick is also a businessman and has multiple ventures related to track-and-field which are impacted by these charges.

The United States recognized the public status of Montgomery and Riddick, describing them in the most recent Indictment as, respectively, "a former Olympic gold medalist and world record holding sprinter" and "a former Olympic gold medalist and TIMOTHY MONTGOMERY'S track coach." No other defendant was described in the Indictment beyond their name and relationship to the other defendants; such descriptions of Montgomery and Riddick were unnecessary to the allegations contained therein. These public figure defendants are the public face of this case, despite the limited role attributed to them in the Superseding Indictment. In large measure, this is no longer a garden-variety fraud conspiracy prosecution, but rather the "Tim Montgomery case." The United States has seen fit to distinguish these defendants for their very notoriety, thereby demonstrating that in considering the respective positions of the defendants involved in this case, the Court needs to assess their different situations and circumstances.

The lengthy pretrial delay leaves Montgomery and Riddick in a state of flux that is uniquely prejudicial to them, given their status as recognized public figures facing extra-judicial scrutiny that could end their professional careers. Unlike the typical criminal defendant (and

15

each of the New York Defendants in this case),the pending indictments against Montgomery and Riddick, and their public persona, limit and/or prevent their pursuit of business ventures or their chosen professions, pending the resolution of the charges against them. The allegations of involvement in this conspiracy have hampered Montgomery and Riddick in ways beyond that experienced by a normal defendant. The allegations have had a significant impact on their respective public images, as the allegations involved in this case have played out in the court of public opinion via widespread media coverage. Their status as criminal defendants has essentially paralyzed their business opportunities, all of which stem from their status as respected public figures.

Defendant Nathaniel Alexander is not a public figure like Montgomery and Riddick, but he will be similarly prejudiced by a lengthy pretrial delay. Defendant Alexander operates a business which procures contracts from the United States government. Alexander's business opportunities have been suspended because of this case, as neither the Government nor other businesses will contract with him while these charges are pending.

The impact which these allegations have had on the Virginia Defendants will not be muted until the charges are resolved. The only way for defendants Montgomery and Riddick to resurrect their public images and resume their post-competition careers is to demonstrate that these allegations are false. The only way for defendant Alexander to resume his government contracting business is to be exonerated at trial. Until they have their day in court, these Virginia Defendants will be personally and professionally hamstrung. As these defendants' only avenue back to the positions which they had earned and enjoyed before these allegations leads through this Court, they need their trial to occur as soon as possible. Delaying trial until April of 2007 to

accommodate a completely distinct group of defendants whom they do not even know and with whom they had no association would be extremely and unfairly prejudicial.

F.    The United States Will Not Be Unduly Prejudiced by a Severance.

In adjudicating the instant motion to sever, this Court weighs the above-described prejudice to the Virginia Defendants against any prejudice to the United States which would flow from a severance. That balance tilts decidedly, indeed overwhelmingly, in favor of a severance. As the evidence against the Virginia Defendants is largely distinct from the more serious, wide-ranging evidence against the New York Defendants, a severed trial would not cause undue duplication of resources. The amount of time required for two severed trials will not exceed the time required for a single trial; the reduction in time spent on cross-examination of government witnesses should actually result in a time savings for this Court. The lack of prejudice to the United States stands in stark contrast to the significant prejudice to the Virginia Defendants. Consequently, this Court should grant the instant Motion for Severance.

*1.    A Severed Trial Against the Virginia Defendants Would Involve Evidence Largely Distinct From That Presented Against the New York Defendants.*

The "shibboleth" that joint trials are more efficient than separate trials when dealing with multi-defendant conspiracy cases "should not unreflectively be taken for granted" in cases such as this one. *Gallo*, 668 F. Supp. at 754. In contrast to cases such as *United States v. Wilson*, 11 F.3d 346, 354 (2d Cir. 1993), where judicial economy was served by joint trial because the movant's "conduct was closely intertwined with that of the other codefendants and virtually all of the same evidence would have to have been presented again at a separate trial," the alleged conduct of the Virginia Defendants is almost wholly partitioned from that of the other defendants. Potential government concerns such as duplication of effort and vastly increased

17

time required for separate trials are insufficient to outweigh the benefits of severance because the assumptions "that actual trial time is exponentially increased by severing a large conspiracy case" and will "'conserve judicial resources'" "support joint trials *only* when the indictment charges 'crimes which may be proved against all the defendants by the same evidence and which result[] from the same or a similar series of acts.'" *Gallo*, 668 F. Supp. at 756 (quoting *United States v. Borelli*, 435 F.2d 500, 502 (2d Cir. 1970) and *United States v. Kahaner*, 203 F. Supp. 78, 81 (S.D.N.Y. 1962)) (emphasis and alterations in original); *United States v. Sperling*, 506 F.2d 1323, 1341 n.25 (2d Cir. 1974), (noting that severance "may in fact be *beneficial* to the government" and that "the Second Circuit has suggested, it might be 'much wiser' to break up these huge cases") (emphasis in original).

      In severed trials of these allegations, there would be little evidentiary overlap between the proceedings.  Relevant evidence in a severed trial of the Virginia Defendants will consist entirely of transactions involving seven counterfeit checks, in which the New York Defendants' involvement after issuance was non-existent or very limited.  The witnesses should be distinct from those necessary to establish the New York conspiracy.  The only witness who links the Virginia Defendants to the New York Defendants is CC-1.  It is presently unclear if CC-1 will be a witness as to the New York Defendants, as the Indictment does not include information of his involvement in the conspiracy, beyond his role as the facilitator of the transactions in Virginia. Accordingly, a severed trial of the Virginia Defendants would not be duplicative of separate trial of the New York Defendants.  Indeed, holding two severed trials would likely involve fewer court days than a single trial, as there would be far fewer separate cross-examinations of government witnesses in the severed trials.

Without severance, the trial of the Virginia Defendants will essentially be a sub-trial within the broader trial of the New York defendants. The case against the Virginia Defendants will essentially be a self-contained "portion" of the trial of the other defendants, reflecting one wing of an alleged "multi-faceted enterprise" as opposed to "a traditional conspiracy, where all of the principals will likely have been involved in the same events and agreements." *Id.* As described above, the prospect of this "sub-trial" presents the potential of prejudicial spillover, as the Virginia Defendants are much less culpable than the New York Defendants.

The United States would suffer little prejudice if forced to try the Virginia Defendants separately. The pending Indictment presents fairly straightforward allegations against the Virginia Defendants. The Indictment avers a discrete number of transactions – only seven checks – and a limited number of potential witnesses. A severed trial against the Virginia Defendants would be unencumbered by the sprawling nature of the broader conspiracy alleged and the sheer number of defendants. Ultimately, separate trials would be "much smoother and more concise" because the evidence in each case would "not scatter about the various contours of the conspiracy." *Id.* Most critically, "the government exposes itself to less chance of reversal in a severed case, because the appellate court is less likely to find multiple conspiracies, and less likely to determine that unfair prejudice tainted the conviction of a defendant." *Id.* at 758 (citing *United States v. Sperling*, 506 F.2d 1323, 1340-41 (2d Cir. 1974)).

> ### 2.    *Severed Trials Will Be Much Easier to Schedule and Less Likely to Be Continued.*

The difficulty in scheduling a trial date which will accommodate perhaps 11 separate defense counsel, 2 prosecutors, and this Court also supports severance. In *United States v. Nachamie*, 101 F. Supp. 2d 134, 151-152 (SDNY 2000), the court denied severance under Rule 14 based on prejudice, but granted severance due to the difficulty in setting a prompt trial date

occasioned by conflicts among defense counsel trial calendars. The court did so based on its "inherent power to sever trials in the interest of efficient judicial administration." *Id.* (citation omitted). "District judges must retain a considerable degree of discretion in determining whether, on balance, the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants." *Unites States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989).

If this Court denies the instant motion to sever, the Court will remain burdened with having to "coordinate the schedules of scores of persons for months on end" with one conflict or absence "throw[ing] a clog into the trial that brings it to halt" to the detriment of the Virginia Defendants. *Gallo*, 668 F. Supp. at 754-55. While trial is set for April 2, 2007, the possibility of at least one of the defense attorneys and/or prosecutors involved in this case having an unforeseen conflict is very real. It is also possible that this Court's obligations could present a scheduling conflict, such that a continuance beyond April 2, 2007 would be required. Continuing with a joint trial in the face of their already raised Speedy Trial Act and Sixth Amendment concerns stretches the Virginia Defendants' speedy trial rights "about as far as can be without making a mockery of [their] constitutional protection." *Id.* at 754.

The Court avoids the spectre of a continuance and the resulting increased prejudice to the Virginia Defendants by granting the instant severance motion. Severance protects the Virginia Defendants' Sixth Amendment and speedy trial rights, while giving the Court "much greater flexibility to administer both [the present case] and other cases" because its calendar "is more easily adjusted and controlled, [and] conflicts are more readily reconciled." *Id.* at 755. Overall, in an instance such as this where separate trials would "concern aspects of the enterprise which are clearly separable and independent," severance alleviates numerous compelling risks and

20

concerns for all involved, without creating inefficiencies or prejudices of its own. *Id.* at 758.
The relief requested by the instant Motion should therefore be granted.

**IV.    Delay of the Trial Of This Matter Until at Least April 2007 Implicates
the Virginia Defendants' Statutory and Constitutional Speedy Trial Rights.**

Forcing the Virginia Defendants to wait until the currently scheduled trial date of April 2,
2007 will violate the Speedy Trial Act, 18 U.S.C. § 3161 et seq. While this Court has entered
several Orders excluding time from the speedy trial calculation, those orders do not indicate
good cause for the 8-month continuance contemplated by the April, 2007 date. The Virginia
Defendants' strong showing of prejudice, as outlined above, makes such a lengthy continuance
also a violation of their Sixth Amendment right to speedy trial. To accommodate the Virginia
Defendants' speedy trial rights, this Court must grant a severance and schedule a trial of the
Virginia Defendants in 2006.

**A.    The April 2, 2007 Trial Date Violates the Speedy Trial Act.**

The Speedy Trial Act provides that the trial of any defendant who has pleaded not guilty
"shall commence within seventy days from the filing date (and making public) of the information
or indictment, or from the date the defendant has appeared before a judicial officer of the court in
which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act
provides that certain periods of time are excluded in computing the seventy day period of the
speedy trial clock. 18 U.S.C. § 3161(h). Where, as here, multiple defendants are joined in one
case at different times, all of the defendants share a single speedy trial clock which begins to run
at the latest joinder of any defendant. *See United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983).

*1.    Defendant Timothy Montgomery*

Defendant Timothy Montgomery was arrested in Norfolk, Virginia on April 28, 2006.
On that date, he first appeared before a United States Magistrate Judge in the Norfolk Division of

the Eastern District of Virginia. Also on that date, the Indictment against Montgomery was unsealed by this Court. Pursuant to 18 U.S.C. § 3161(c)(1), the speedy trial clock for Montgomery began to run on that date.

Montgomery first appeared before this Court on May 3, 2006. On that date, this Court entered an Order excluding the period from May 3, 2006 through July 11, 2006 from the speedy trial calculation. Accordingly, the clock stopped after only 5 days had elapsed since Montgomery's first appearance.

On July 11, 2006, this Court held a status hearing in this case. It also entered another speedy trial Order, excluding the period from July 11, 2006 through September 15, 2006 from the speedy trial calculation. Defendant Montgomery consented to the Court's Orders of that excludable delay.[3]

On September 15, 2006, the speedy trial clock will start running anew. As the clock for Montgomery ran for 5 days before this Court's successive Orders tolling the time, he has a right to a trial within 65 days of September 15, 2006 – which date is November 19, 2006. As that date falls on a Sunday, Montgomery has a right to a trial commencing no later than November 20, 2006.

2.    *Defendant Steven Riddick*

Defendant Steven Riddick was arrested on February 9, 2006 in Bentonville, Arkansas. On the same day, he first appeared before a Magistrate Judge in the Northern District of Arkansas, was released and Ordered to report to the Southern District of New York. The Indictment against Riddick was unsealed by this Court on the same day, February 9, 2006.

---

[3]    The September 15, 2006 date in the Court's exclusion Order corresponds with the next scheduled status hearing in this case.

22

Pursuant to 18 U.S.C. § 3161(c)(1), the speedy trail clock for Riddick began to run on February 9, 2006.

Riddick first appeared before the Honorable Judge Kevin Nathaniel Fox on February 14, 2006 in the Southern District of New York. On February 14, 2006, the Court presumably entered an Order excluding the period of time from February 14, 2006 to April 28, 2006 from the speedy trial calculation. Accordingly, the clock was stopped after only five (5) days since Riddick's first court appearance.

On April 28, 2006, the Court held its first status hearing in this case. It also entered a second speedy trial order excluding the period of time from April 28, 2006 until July 11, 2006 from the speedy trial calculation. Defendant Riddick consented to the Court's Orders of that excludable delay.

On July 11, 2006, this Court held a second status hearing. It entered a third speedy trial Order, excluding the period from July 11, 2006 through September 15, 2006 from the speedy trial calculation. Defendant Riddick consented to this Order as well. The September 15, 2006 date corresponds with this Court's next scheduled status hearing.

On September 15, 2006, the speedy trial clock will start running anew. Since the clock for Riddick ran for a mere five (5) days before this Court's successive Orders tolling the time, he had a right to a trial within 65 days from September 15, 2006—which date is November 19, 2006. Therefore, Riddick has a right to a trial commencing no later than November 20, 2006.

### 3.    *Defendant Nathaniel Alexander*

Defendant Nathaniel Alexander was arrested in Portsmouth, Virginia on February 9, 2006. On that date, he first appeared before a United States Magistrate Judge in the Norfolk Division of the Eastern District of Virginia. Also on that date, the Indictment against Alexander

was unsealed by this Court.  Pursuant to 18 U.S.C. § 3161(c)(1), the speedy trial clock for

Alexander began to run on that date.

Alexander first appeared before Judge Kevin Nathaniel Fox of this Court on February 14,

2006.  On that date, this Court entered an Order excluding the period from February 14, 2006

through April 28, 2006 from the speedy trial calculation.  Accordingly, the clock stopped after

only 5 days had elapsed since Alexander's first appearance.

On April 28, 2006, this Court held a status hearing in this case.  It also entered another

speedy trial Order, excluding the period from April 28, 2006 through July 11, 2006 from the

speedy trial calculation.  Defendant Alexander consented to the Court's Orders of that excludable

delay.

On July 11, 2006, this Court held a status hearing in this case.  It also entered another

speedy trial Order, excluding the period from July 11, 2006 through September 15, 2006 from

the speedy trial calculation.  Defendant Alexander did not consent to the Court's Orders of that

excludable delay; however, as there are motions pending, this time is excluded under the Act.

If Alexander's motions are decided before September 15, 2006, the speedy trial clock

will start running anew on that date.  As the clock for Alexander ran for 5 days before this

Court's successive Orders tolling the time, he has a right to a trial within 65 days of September

15, 2006 – which date is November 19, 2006.  As that date falls on a Sunday, Alexander has a

right to a trial commencing no later than November 20, 2006.

> ### 4.    *April 2, 2007 is Beyond the Speedy Trial Deadline for All Three Virginia Defendants.*

As they represented to this Court at the July 11 status hearing, the Virginia Defendants do

not believe that any further continuance is necessary and are prepared to proceed to trial

beginning in October of 2006.  While a continuance could be granted based on the unusual or

complex nature of a case, any such continuance would have to be related to the actual needs of

the case to be excludable under the Act. *See United States v. Gambino*, 59 F.3d 353, 358 (2d

Cir. 1995) (noting that exclusions in a complex case should be limited in time and excluded only

where reasonably related to the actual needs of the case); *see also United States v. Lofranco*, 818

F.2d 276, 277 (2d Cir. 1987) (admonishing in addition that such exclusions should not be used as

a calendar control device); 18 U.S.C. § 3161(h)(8)(B)(ii). Here, by contrast, a further delay

would not be related to the complexities of this case, as the allegations against the Virginia

Defendants are temporally limited and uncomplicated. A delay is not necessary for counsel to

have adequate time to prepare for trial. The United States has been investigating this case for

more than a year and is on its fourth Indictment. The Virginia Defendants have stated clearly

that they and their counsel will be able to proceed to trial by early October 2006

     The only reason for a delay of the trial of the charges against the Virginia Defendants is

the unavailability of counsel for the New York Defendants. That reason is insufficient to trump

the substantial rights of the Virginia Defendants. Neither a crowded court calendar nor the

unavailability of co-defendants' counsel is a valid excuse for delay under the Speedy Trial Act.

*See United States v. Carrasquillo*, 667 F.2d 382, 385 (3d Cir. 1981) (holding it is an abuse of

discretion to exclude time due to the defendant's attorney's unavailability, absent a continuance);

*United States v. Rodriguez*, 617 F. Supp. 788, 791 (E.D.N.Y. 1985) (holding that defendant's

counsel's unavailability due to other trial commitments is not excludable under the "ends of

justice" exception even when defendant had stated that he understood the reason for delay); *see*

*also United States v. Didier*, 542 F.2d 1182, 1188 (2d Cir. 1976) (holding that a crowded court

calendar is insufficient reason to delay a retrial following a mistrial); 18 U.S.C. § 3161(h)(8)(C)

(stating that a continuance is not excludable when granted "because of general congestion of the court's calendar. . .").

While the New York Defendants appear to have acquiesced in the current delay of a trial date, the Virginia Defendants have not. Without severance, their statutory speedy trial rights will be violated, making any conviction obtained against them ripe for appeal and reversal. The speedy trial calculation is binding and jurisdictional. Although the substantial prejudice to the Virginia Defendants has been set forth above, no showing of prejudice is even required, as the delay is unrelated to motions practice or excludable continuances. *United States v. Adu*, 770 F.2d 1511, 1514 (9th Cir. 1985), *cert. denied* 475 U.S. 1030 (1985) (holding that the Act does not require a showing of prejudice by the defendant if its time limits are violated). Only a severance of the Virginia Defendants will avoid violating their rights under the Act. Accordingly, this Court should grant the instant Motion.

B.  <u>Delay of the Trial Until April 2, 2007 Will Violate The</u>
<u>Virginia Defendants' Sixth Amendment Right to Speedy Trial.</u>

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," which is a right the Supreme Court has held to be "as fundamental as any of the rights secured by the Sixth Amendment." U.S. CONST. AMEND. VI. In *Barker v. Wingo*, 407 U.S. 514, 530-32 (1971) the Supreme Court held that four factors are key in determining whether a defendant's Sixth Amendment right to a speedy trial has been deprived: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. The *Barker* Court noted that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case" because the right "'is necessarily relative'" to the circumstances of the case. *Id.* at 522 (quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)). Further, it cautioned that the four factors were just

26

"some of the factors which courts should assess" in constitutional speedy trial inquiries which by their nature must be conducted on an "*ad hoc* basis." *Id.* at 530; *see also id.* at 533 (noting that the factors are related, must be considered together with other relevant circumstances, and have "no talismanic qualities").

The *Barker* Court and subsequent cases in the Second Circuit have ruled that the length of the delay and its "presumptively prejudicial" effect on the defendant are a threshold that must be crossed before a further speedy trial analysis can proceed. *See id.* at 530-31 (noting that satisfaction of this "triggering mechanism" "is necessarily dependent upon the peculiar circumstances of the case"). There are no set criteria by which a delay can be deemed presumptively prejudicial; however, illustrative cases have found that delays of less than one year can be sufficient. *Doggett v United States*, 505 U.S. 647, 652 n. 1 ("depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"); *United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir. 1970) (finding nine months to be an overlong delay absent good reason where eyewitness testimony would be required)); *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting a "general consensus that a delay of over eight months meets this [presumptively prejudicial] standard, while a delay of less than five months does not").

In this case, the April 2, 2007 trial date is eleven months beyond the most recent Superseding Indictment. Such a delay, particularly in the face of the relatively straightforward nature of the allegations and the Virginia Defendants' stated desire to have a prompt trial, is more than adequate to clear the presumptive prejudice bar of *Barker*.

The next two *Barker* factors—reason for delay and assertion of the right to a speedy trial—again weigh heavily in favor of severing the Virginia Defendants from this case. The

27

current delay is due primarily to an inability of counsel for the New York Defendants to agree

upon a trial date that will accommodate all of their and the Court's calendars. This is not a delay

caused by the Virginia Defendants, but rather by the sprawling nature of this case and the

inclusion of multiple defendants against whom the evidence is distinct from that against the

Virginia Defendants.

Further, the Virginia Defendants are asserting their right to a speedy trial at an early stage

of the case, where substantial delays have only just begun to surface. Given the number of

defendants, the variety of activities allegedly involved and the differing levels of involvement

alleged against the individual defendants, it is certainly possible that the April 2, 2007 trial, as

well as subsequent trial dates, may be delayed by future developments. The impact this could

have on the Virginia Defendants, who are prepared to face trial by early October 2006, can be

forestalled by granting the instant Motion.

Finally, the Virginia Defendants will suffer trial-related prejudice if they are forced to

wait until April, 2007, or later, to participate in a joint trial of this case. As described fully

above, Tim Montgomery and Steve Riddick are public figures who have been substantially

harmed by the mere allegations in this case. The pending charges have impacted them both

professionally and threaten the continued pursuit of their post-athletic careers. In addition, these

charges have resulted in heightened public scrutiny on both Montgomery and Riddick, due to the

nature of the allegations and Montgomery's status and renown as an Olympic champion and

world record holder. Forcing Montgomery and Riddick to wait almost a year, if not longer, to

answer these criminal charges in the face of this scrutiny will hinder their ability to effectively

prepare for and participate in their criminal defense. *See Barker*, 407 U.S. at 532-33 (identifying

28

"anxiety and concern of the accused" and "the possibility that the defense will be impaired" as interests to be protected via the right to a speedy trial).

WHEREFORE, Defendants Timothy Montgomery, Steven Riddick and Nathaniel Alexander respectfully request that the Court grant the instant Motion for Severance and set the case against them for a trial in 2006, separate from the other defendants in this case, as well as such further relief as the Court deems appropriate.

Dated: August 18, 2006

Respectfully submitted,

TIMOTHY MONTGOMERY


By_____/s/_____
        Robert J. McFarland, Esq.
        McGuireWoods LLP
        101 W. Main Street, Suite 9000
        Norfolk, VA 23510
        757-640-3716
        *Attorney for Defendant*
        *Timothy Montgomery*

STEVEN RIDDICK


By_____/s/_____
        Bryan Henry Hoss, Esq.
        Davis & Hoss, P.C.
        508 E. 5th Street
        Chattanooga, TN 37403
        423-266-0605
        *Attorney for Defendant*
        *Steven Riddick*

NATHANIEL ALEXANDER


By_____/s/_____
         Michael Fineman, Esq. (MF 0282)
         305 Broadway, 7th Floor
         New York, NY  10007
         212-897-5823
         *Attorney for Defendant*
         *Nathaniel Alexander*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of August, 2006, I caused a copy of the foregoing

Joint Motion for Severance of Defendants Timothy Montgomery, Steven Riddick and Nathaniel

Alexander to be served via Clerk's Notice of Electronic Filing upon the following attorneys, who

are filing users in this case:

Danya Perry, Assistant U.S. Attorney
United States Attorney's Office
One Saint Andrew's Plaza
New York, NY  10007

Denis Patrick Kelleher, Jr., Esquire
Kelleher & Dunne LLP
17 Battery Place, 11th Fl.
New York, NY 10004

Daniel Steven Parker, Esquire
Parker & Carmody, LLP
1350 Broadway, Suite 1400
New York, NY 10018

Xavier Robert Donaldson, Esquire
Donaldson, Chilliest & McDaniel, LLP
103 East 125th Street
New York, NY 10035

George Robert Goltzer, Esquire
200 West 57th Street, Suite 900
New York, NY 10019

Neil Stephen Cartusciello, Esquire
2 West Main Street
Mendham, NJ 07945

David L Lewis, Esquire
Lewis & Fiore
225 Broadway, Suite 3300
New York, NY 10006

Thomas Hamilton Nooter, Esquire
Freeman Nooter & Ginsberg
30 Vesey Street, Suite 100
New York, NY 10007

Harvey Fishbein, Esquire
61 Broadway, Suite 1601
New York, NY 10006

Susan Vicki Tipograph, Esquire
350 Broadway, Suite 700
New York, NY 10013

_____
       /s/
Robert W. McFarland

\4123493.1

31