1   Q.   All right.  Did you hear what Ms. Perry had said about the
2   summary of the proof she would put on if the case were to go to
3   trial?
4   A.   Yes, your Honor.
5   Q.   How do you plead to Count One of the information, the bank
6   fraud conspiracy charge, guilty or not guilty?
7   A.   Guilty, your Honor.
8   Q.   Counts Two through Ten, the substantive bank fraud charges,
9   guilty or not guilty?
10  A.   Guilty, your Honor.
11  Q.   Counts Eleven through Thirteen, the money laundering
12  conspiracy charges, how do you plead, guilty or not guilty?
13  A.   Guilty.
14  Q.   Count Fourteen, the false statements charge, how do you
15  plead, guilty or not guilty?
16  A.   Guilty.
17       THE COURT:  I really think Count One through Thirteen,
18  Mr. Fishbein, a lot of it is just related conduct, so if you
19  want to have your client just summarize all the transactions
20  and we will cover the immigration charge separately.
21       (Pause)
22  A.   Your Honor, I was engaged in various checks, fraudulent
23  checks, with Douglas Shyne and others, defrauded financial
24  institutions, several financial institutions, and I am guilty
25  of all the charges.

1  Q.  With respect to the bank fraud conspiracy charge in Count
2  One, the allegation is that to further this conspiracy you
3  deposited an $8,500 check into your account in Commerce Bank
4  and that was drawn on Richardson Chase Bank account; is that
5  true?
6  A.  Yes, your Honor.
7  Q.  The other allegation is that to further the conspiracy on
8  or about August 3, 2005 you issued approximately three checks
9  to yourself in a total aggregate amount of $59,500 drawn on the
10 Cafe Lounge account; is that true?
11 A.  Yes.
12 Q.  You understood that those checks that were involved were
13 bad checks, that they were fraudulent and counterfeit, that
14 they were bad checks, did you understand that?
15 A.  Yes.
16 Q.  You engaged in this conspiracy with at least one other
17 person?
18 A.  Yes, your Honor.
19 Q.  Did you know what you were doing was illegal?
20 A.  Yes, your Honor.
21 Q.  And did something take place in the Southern District of
22 New York, in Manhattan or the Bronx?  Were these accounts in
23 Manhattan?
24 A.  Some of the accounts were in Manhattan.
25 Q.  With respect to the Commerce Bank account, was that in

1  Manhattan?
2  A. No, that was in New Jersey.
3         THE COURT: Are there any accounts in Manhattan here
4  that are affected or involved in this conspiracy, Ms. Perry?
5         MS. PERRY: Yes, your Honor.
6         THE COURT: Other accounts other than Ms. Singh's?
7         MS. PERRY: Correct, your Honor.
8  Q. Did this conspiracy go from approximately December 2002 to
9  till approximately August of '05?
10 A. Yes, your Honor.
11 Q. With respect to the substantive bank fraud charges, the
12 specific checks that the government alleges you were involved
13 in, Count Two deals with March through August '04 $775,000
14 stolen check that affected Wachovia Bank, can you tell me what
15 you did in connection with that check?
16 A. I along with my other co-conspirators stole the check and
17 deposited it.
18 Q. All right. You knew what you were doing was illegal?
19 A. Yes.
20        THE COURT: Again, is Wachovia bank a Manhattan
21 account or Manhattan bank?
22        MS. PERRY: I am sorry?
23        THE COURT: Is Wachovia a Manhattan bank?
24        MS. PERRY: There are certain branches here, but it
25 was not drawn -- the check was stolen in Manhattan. That is

1    the basis for venue here.

2    Q.  Ms. Perry is saying the check was stolen in Manhattan.  Is

3    that true?

4    A.  Yes.

5    Q.  Count Three alleges that between October and December of

6    '04, there was a $150,000 check involving Bank of America.  Can

7    you tell me what you did in connection with that charge?

8    A.  Yes, your Honor, I deposited that check.

9    Q.  Did you know it was a bad check or have reason to believe

10   it was a bad check?

11   A.  Yes, sir.

12   Q.  You deposited it in Bank of America?

13   A.  Yes.

14           THE COURT:  And venue on this, Ms. Perry?

15           MS. PERRY:  With respect to each of those three

16   charges, there is venue whether -- because the check was

17   deposited in Manhattan, because the checks drawn off that

18   account were deposited into Manhattan banks.  I think Ms. Singh

19   would waive venue or agree at least that there is a venue in

20   each of those.

21           MR. FISHBEIN:  That is correct.

22           MS. PERRY:  The check, your Honor, I believe was drawn

23   on Bank of America, it was not deposited in Bank of America.

24           THE COURT:  All right.

25   Q.  Count Four, Ms. Singh, between December '04 and May of '05

1  there were three checks totalling $905,000, the bank involved
2  or a bank involved was Wachovia. Would you tell me what you
3  did in connection with that charge?
4  A. I knew of the check, I knew of the check, that my
5  co-conspirators were working on the check, but I helped type
6  the names on the check. I guess that's about it.
7           THE COURT: So you helped type the names. Was this
8  part of the counterfeiting exercise?
9  A. Yes.
10 Q. All right. Count Five --
11          MR. FISHBEIN: I am sorry, Judge, it wasn't part of
12 the counterfeiting. It was part of making of the changing back
13 and forth of the checks, so for deposit purposes, to wash the
14 money through.
15 Q. What Mr. Fishbein says, is that accurate?
16 A. Yes, that is. I also put money into my account.
17 Q. From those checks, the $905,000?
18 A. Yes.
19 Q. All right. Count Five, between March and May of '05 two
20 checks totalling $1 million involving Wachovia. What did you
21 do in connection with that charge?
22 A. Your Honor, I was aware that those checks were going down
23 to Virginia, and I discussed with it Mr. Shyne, and I hoped to
24 profit from those checks.
25 Q. Did you profit from those checks?

1  A.  No.

2  Q.  Did you do anything --

3      MR. FISHBEIN:  She hoped to profit.

4  Q.  Hoped. did you have any involvement in these checks?  Did
5  you do anything?

6  A.  Just knowing -- I participated in conversations, your
7  Honor.

8  Q.  With whom?

9  A.  Douglas Shyne.

10 Q.  What was discussed during these conversations with Mr.
11 Shyne that helped this part of the operation succeed?

12 A.  That he was sending checks down to Virginia and he is
13 sending it to -- who he is sending it to.

14     MS. PERRY:  Just a moment, your Honor.

15     (Pause)

16 Q.  Ms. Singh, go ahead.

17 A.  Your Honor.  I knew from that arrangement when they were --
18 that he was sending the checks down to Virginia, that I would
19 be gaining something back from it when the checks come back,
20 laundered through the account.

21 Q.  But did you do anything that just going to let people allow
22 you to profit from them?  What did you do to get a profit?

23 A.  A check was given to Richardson, and part of that check was
24 given to me to deposit to my account.

25 Q.  Then what happened from there?

1  A.   The check -- I deposited the check into my account.  It
2  never cleared.
3  Q.   So this was supposed to be part of the same checks, a total
4  of $1 million?
5  A.   Yes.
6  Q.   All right.  Count Six, between March and May of '05 two
7  checks, total of $775,000.  What did you do in connection with
8  that charge?
9            (Pause)
10 Q.   I think we are at Count Six, March through May of '05,
11 checks totaling $775,000, Ms. Singh.
12 A.   Your Honor, with respect to that check I was aware that a
13 check was -- American Express check was sent in my name to me.
14 I was told that check was remade from a larger amount, how much
15 I can't remember right now, but I was aware of it.
16 Q.   Did you do anything with the check?
17 A.   No, I did not do anything with the check.
18 Q.   Did anybody else do anything with the check?
19 A.   I think Douglas Shyne remade the check and sent it to
20 whoever in Virginia.
21 Q.   So the check was in your name?
22 A.   Yes.
23 Q.   So you deposited the check?
24 A.   No, he had the check, he remade the check, remade the check
25 for I believe that amount that is stated here.

```
73JCSINP                          Singh - Plea
```

1  Q.  There is two checks totaling $775,000, so I am a little
2  confused.
3          (Pause)
4  A.  I was aware that the American Express check was remade
5  over, there was something wrong with it, and there was a second
6  check also, Euro Motor check that was remade and came to my
7  account.
8  Q.  What did you do with that?
9  A.  I deposited it.
10 Q.  So the $58,000 check, the other one was $717,000 to make
11 775?
12         MS. PERRY:  No, your Honor, let me just clarify.
13 There are actually three checks in connection with that
14 that were deposited by Timothy Montgomery and his associates.
15 One check was for $575,000.  The original of that check was a
16 check issued by American Express to Ms. Singh.  It was a
17 merchant account for a business, New York Cafe Lounge.  Ms.
18 Singh was aware that that American Express check was being
19 altered, and she went along with that
20         THE COURT:  How was it altered?
21         MS. PERRY:  It was altered, it's not -- it's other
22 co-conspirators that handled this aspect of it, but they
23 scanned it and they made adjustments that changed the amount
24 from $7.12 $575,000, they changed the payee, and they put it on
25 check stock essentially, and then that check was then sent to

1  Timothy Montgomery sports agent in Texas, and Ms. Singh was
2  aware of it.
3           THE COURT:  So the check was originally made out to
4  her, the $7 check, and then others in the group altered it or
5  made it a new check totaling 575?
6           MS. PERRY:  That's correct, your Honor.  The check was
7  actually made out, the payee was New York Cafe Lounge of which
8  she is a principal, and then there was another check for
9  $550,000 that was also deposited by Mr. Montgomery's agent that
10 is not charged here and then the third -- the second check
11 referenced in Count Six is a check that was originally issued
12 against New York Cafe Lounge in the amount of $58,000 from an
13 automobile dealership in Florida.  That check actually was
14 deposited by Ms. Singh into the New York Cafe Lounge account.
15 It subsequently was altered in the way I just described where
16 the scanning and changing the amount and the payee, and that
17 check was sent to Timothy Montgomery with a new payment amount
18 of $200,000, and Ms. Singh was also aware that this check was
19 altered in the way I just described.
20          THE COURT:  So did she deposit the check that was
21 $200,000?
22          MS. PERRY:  She deposited $58,000 check.
23          THE COURT:  It became $200,000.
24          MS. PERRY:  It later was scanned and became a $200,000
25 check.  She was aware the check was being deposited.

73JCSINP                           Singh - Plea

1            THE COURT:  In effect, it was deposited twice.
2            MS. PERRY:  They changed the check number so it wasn't
3    the same check.
4            THE COURT:  But same check was used twice, once
5    directly and once during the --
6            MS. PERRY:  I wouldn't really say that.  One check was
7    used and deposited, and then the photocopy of that check, if
8    you will, was used in a way, but the image of that check was
9    used twice.
10           THE COURT:  Her deposit of the $58,000 check, how did
11   that help advance the scheme?
12           MS. PERRY:  I wouldn't say it advanced it in itself,
13   but she was aware that this check was being used to create a
14   new check.
15           THE COURT:  How does her being aware that a crime is
16   being committed make her guilty of that crime?
17           MS. PERRY:  I think she could say -- I think it's a
18   tough question, but because she is pleading pursuant to this
19   plea agreement, I think we all would agree that she was -- she
20   lived with Shyne, she was aware certainly generally, in some
21   cases specifically, of checks that he was having his associates
22   alter, and she would consult with him, at times they would
23   discuss the amounts, the check would then be altered.  She was
24   aware they were being sent to co-conspirators, and many times
25   when those checks actually cleared she would move money through

1  her account.
2          So it's certainly fair to say that she discussed it
3  with Mr. Shyne in furtherance of the conspiracy, but on many
4  occasions in particular with those checks with the Virginia
5  defendants, she didn't do a whole lot of overt acts.
6          THE COURT:  The problem is that Count Six is a
7  conspiracy count, of course, and while generally speaking
8  her role might have been among other things consultation, I
9  haven't really heard anything about these checks other than she
10 knew what was going on.
11         MS. PERRY:  Your Honor, could I have just one moment?
12         THE COURT:  Yes.
13         (Pause)
14         THE COURT:  Can I make a suggestion?  There is a case
15 that's been waiting for a long time.  Can I just take a break
16 on this case while you all talk?
17         MS. PERRY:  I think we are just about done, and then
18 we are going to be done with the plea.
19         THE COURT:  You are sure, because there is four other
20 counts.
21         MS. PERRY:  There are not going to be any issues like
22 this with the other counts.  She herself did something overt in
23 those cases.
24         THE COURT:  All right.
25         (Pause)

1    MS. PERRY: Your Honor with respect to Count Six, I
2 think it is fair to say that while she knew about the checks
3 generally, she herself did not do anything overt with respect
4 to those checks; and so I am going to request that
5 she actually -- that we take this out of the information and
6 have her not plead to this because it doesn't seem she can
7 plead to having done something substantively with respect to
8 those checks.
9    THE COURT: I think, given what I have heard, that is
10 a prudent thing to do because I understand that generally
11 speaking she may have had certain roles, but as to this one
12 particular episode I don't think it's there. All right, Count
13 Seven. We will figure out the logistics of this later.
14 BY THE COURT:
15 Q. Count Seven, between June and July of '05, $175,000 check
16 from Wachovia. Ms. Singh, what did you do in connection with
17 this check?
18    (Pause)
19 A. Your Honor, in respect to that $175,000 check, I was aware
20 that some funds from the check was given to my mother to
21 deposit to her account, and then she in return would write a
22 check back to me against New York Cafe Lounge to deposit into
23 my account, and through that I would have some gain from that
24 check.
25 Q. You knew the check you got from your mother was proceeds of

1   a bad check?
2   A.  Yes.
3   Q.  All right.  The check, total amount of that check was
4   $175,000?
5   A.  Yes, your Honor.
6           MS. PERRY:  Yes, your Honor.
7   Q.  Count Eight, between May and July of '05 a $375,000 check,
8   Bank of America.
9   A.  Your Honor, in reference to that check, I was aware that a
10  check that was given -- it was a refund check from college
11  whereby that was given back to me in my daughter's name.  I was
12  aware that Mr. Shyne was going to alter the check.  The amount,
13  I wasn't aware of the amount of how these charges came about;
14  and due to all of that I was aware that somewhere along the
15  line the money would channel back to me in my account, and I
16  would get some kind of gain from that.
17          THE COURT:  So was your depositing the check part of
18  the scheme?
19  A.  No, I believe he gave somebody else the check to deposit,
20  but had the check gone through, they would have write a check
21  to me or however he designed it, a check would come back to me,
22  so I would deposit in my account and get some type of gain.
23  Q.  So the check didn't make it through is that what happened?
24  A.  I believe the check did not go through.
25          THE COURT:  Ms. Perry, is that right?

```
73JCSINP                                    Singh - Plea
```

1           MS. PERRY:  Yes.
2   Q.  So the plan was to have you get the proceeds of that check?
3   A.  Yes.
4   Q.  Count Nine, June '05, $108,000 check.
5   A.  Your Honor, I participated in this by depositing the check
6   knowing it was a bad check, deposited in an account for
7   Nathaniel Shyne, that's his brother.
8   Q.  Which account did you deposit it in?
9   A.  In Nathaniel Shyne's account.
10  Q.  Which bank?
11  A.  Commerce Bank.
12          THE COURT:  Was it drawn on a Wachovia Bank account?
13  Is that what it was, Ms. Perry?
14          MS. PERRY:  Yes.
15          THE COURT:  Ms. Singh didn't allocute to that.
16  Q.  All right.  Finally, Count Ten, between July and August of
17  '05, two checks totalling $150,000.
18  A.  Your Honor, I was aware of this check because $73,000 was
19  written out to my name to deposit into my account.
20  Q.  Was the $73,000 a bad check?
21  A.  The $73,000 was -- I believe it's a good check from one of
22  the persons who deposited the bad check and the funds became
23  available.
24  Q.  So it was the proceeds of a bad check?
25  A.  Yes.

1  Q.  All right.  In connection with Counts Two through Five and
2  Seven to Ten, you knew what you were doing was illegal?
3  A.  Yes, sir.
4  Q.  The dates that are mentioned there, are they roughly
5  accurate?
6  A.  Yes, sir.
7  Q.  Counts Eleven and Twelve and Thirteen are separate money
8  laundering activity, they just deal with different time
9  periods.  There is some overlap.
10             Count eleven, that you and at least one other person
11 laundered money between 2003 and August 2005, and the specific
12 overt act, is that on or about July 28, 2004 to August 16,
13 2004, you deposited approximately four checks totaling $180,000
14 drawn on the Citibank account of Christine Richardson into an
15 account at the Bank of America maintained in the name of
16 Douglas New York Five Star Cafe, Douglas New York Five Star
17 Cafe, a shell corporation used to launder the proceeds of the
18 fraudulent activity.  What did you do in connection this
19 conspiracy?
20 A.  I was aware that the check that I was depositing into that,
21 that was New York Cafe Lounge, was proceeds of a bad check.
22 Q.  Was the idea behind this to clean the money or other least
23 give it the appearance of being clean?
24 A.  Yes, I believe that the plan was to deposit the money into
25 the account, withdraw the cash out, so that was paying these --

Q. The money laundering conspiracy charged, you knew what you were doing was illegal?
A. Yes.
    THE COURT: Again, is venue waived here or otherwise conceded?
    MR. FISHBEIN: Yes.
Q. Count Twelve, separate money laundering conspiracy in March to May of 2005, the overt acts that relate to you are the deposit of the $72,400 check in your Commerce Bank account, April of '05, and then the separate depositing of $8,500 check into the Commerce Bank account. What did you do in connection that conspiracy charge?
A. Your Honor I deposited those checks knowing that those proceeds was from a bad check.
Q. Was this part of a scheme to hide the proceeds of the bank fraud?
A. Yes, this was the -- I guess the idea also was to get cash for them to pay what he needed to pay.
Q. This involved you and at least one other person? You don't have to tell me who but at least one other person?
A. Yes, your Honor.
Q. Finally, Count Thirteen of money laundering conspiracy count between June and August of '05, you and at least one other person conspired to violate the money laundering statute.

Here the overt acts are that on June 8, '05 you deposited a counterfeit check in the amount of approximately $180,000, in August 3, '05 you issued at least three checks to yourself s totaling aggregate amount of approximately $59,500. What did you do in connection with that conspiracy?

A. Your Honor, I was aware of the $180,000 check, that it was a bad check and I deposited it into Nathaniel Shyne's account.

Q. But you deposited it yourself?

A. I deposited the check, yes, into Nathaniel Shyne's account.

Q. And the other issuing at least three checks to yourself totaling $59,000, was that the proceeds of bank fraud?

A. Yes, your Honor, it came from that.

Q. In connection with all these money laundering conspiracy counts, you knew what you were doing was illegal?

A. Yes, your Honor.

THE COURT: Interstate commerce was affected, Ms. Perry?

MS. PERRY: Yes, your Honor.

Q. Finally, the false statement count. In May of 2004 did you speak with folks from the Immigration and Naturalization Service?

A. Yes, your Honor.

Q. Did you tell them that you had never committed a crime or offense for which you had not been arrested?

A. Yes, your Honor.

1   Q.  Was that true?

2   A.  I gave them a misstatement, your Honor, because the

3   question was, I believe I am not committing a crime or have I

4   committed a crime, and I said no, and I was --

5   Q.  What crime were you committing.  Is that was bank fraud?

6   A.  Yes.

7   Q.  And money laundering?

8   A.  Yes.

9   Q.  All right.  This occurred in May of 2004?

10  A.  Yes.

11  Q.  Did this take place in New York or is venue waived here?

12  A.  In New York.

13        MS. PERRY:  Venue is waived, in any event.

14        MR. FISHBEIN:  It is waived.

15        THE COURT:  I was just making sure.

16        MR. FISHBEIN:  Not a issue.

17  Q.  You knew it was illegal?

18  A.  Yes.

19        THE COURT:  Does counsel believe there is anything

20  else by way of allocution to any of these charges?  Ms. Perry?

21        MS. PERRY:  No, your Honor.  I would just also note

22  that she has consented to this forfeiture allegation on the

23  proceeds of these crimes.

24        THE COURT:  All right, and Mr. Fishbein, anything else

25  by way of allocution?

1          MR. FISHBEIN:  Not that I can think of, your Honor.
2          THE COURT:  Do counsel agree there is a sufficient
3  factual basis for me to accept the plea?
4          MS. PERRY:  Yes, your Honor.
5          MR. FISHBEIN:  Yes, your Honor.
6          THE COURT:  All right.  I agree.
7          Ms. Singh, since you have acknowledged you are in fact
8  guilty as charged in the fourteen-count superseding
9  information, since you know your trial rights, what the maximum
10 possible punishment is in terms of imprisonment, supervised
11 release, and fine, since I have already found you competent to
12 enter this plea, and I hereby find you voluntarily entered this
13 plea, I accept your plea and enter a judgment of guilty in the
14 case.
15         MR. FISHBEIN:  We should wait.
16         THE COURT:  Eventually, Ms. Singh, the Probation
17 Department is going to prepare a presentence report.  They do
18 that because they try to get as much information about you and
19 the crimes as possible so they can inform me, and I use that
20 report to determine what the appropriate sentence is in your
21 case.  When they do their investigation, they will talk to a
22 lot of people, about the government, talk to your family, they
23 will tell talk to you.  Of course, Mr. Fishbein will be present
24 and you should answer whatever questions Mr. Fishbein says you
25 can answer, but make sure that whenever you talk you speak the